**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**H. Coleman YEATTS,
Defendant-Appellant.**

**No. 80–7253
Summary Calendar.**

United States Court of Appeals,
Fifth Circuit.
Unit B

March 16, 1981.

Rehearing Denied April 13, 1981.

---

Edward T. M. Garland, Atlanta, Ga., for defendant-appellant.

William L. Harper, U. S. Atty., William R. Toliver, Asst. U. S. Atty., Atlanta, Ga., for plaintiff-appellee.

Before RONEY, FRANK M. JOHNSON, Jr. and HENDERSON, Circuit Judges.

FRANK M. JOHNSON, Jr., Circuit Judge:

Appellant H. Coleman Yeatts was convicted, after trial by jury, for possession of counterfeit United States gold coins with intent to defraud in violation of 18 U.S.C.A. § 485.[1] He appeals, urging four grounds of error. First, he claims that the trial court erred in denying his motion for judgment of acquittal notwithstanding the verdict. Second, he contends that possession of counterfeit United States gold coins with intent to defraud is not a criminal offense within the meaning of Section 485. Third, he argues that the evidence was insufficient to show that he had the requisite intent to defraud. Last, he contends that the jury

---

1. Title 18 U.S.C.A. § 485 provides:

Whoever falsely makes, forges, or counterfeits any coin or bar in resemblance or similitude of any coin of a denomination higher than 5 cents or any gold or silver bar coined or stamped at any mint or assay office of the United States, or in resemblance or similitude of any foreign gold or silver coin current in the United States or in actual use and circulation as money within the United States; or

Whoever passes, utters, publishes, sells, possesses, or brings into the United States any false, forged, or counterfeit coin or bar, knowing the same to be false, forged, or counterfeit, with intent to defraud any body politic or corporate, or any person, or attempts the commission of any offense described in this paragraph—

Shall be fined not more than $5,000 or imprisoned not more than fifteen years, or both.

instructions constituted plain error by permitting the jury to consider evidence outside the record. We find no reversible error and accordingly affirm.

Yeatts is a professional coin and stamp dealer. He was a booth holder at a stamp trade show in Atlanta on February 24, 1978, when he offered to sell what appeared to be 10 to 15 United States gold coins to another booth holder, Harold Miller. Miller, also a professional coin and stamp dealer, was suspicious of the authenticity of the coins and questioned Yeatts about them. Yeatts admitted to Miller that he knew that those coins were counterfeit. Yeatts also indicated that he sold those types of coins to the "jewelry trade" and to other people who were not aware of the true nature of such coins. Yeatts then told Miller that he had given Miller the wrong group of coins and showed Miller another group of coins. Miller, again suspicious, questioned Yeatts about the authenticity of the second group of coins. Yeatts admitted that those coins were also probably counterfeit but stated that he felt that the coins were "good enough to pass." Miller then contacted the Atlanta office of the United States Secret Service.

Two Secret Service agents arrived at the stamp show and went to Yeatts' booth and asked him to step into the hallway. When they told Yeatts that they were investigating information that he possessed counterfeit coins, Yeatts told the agents that he was not aware that he possessed any counterfeit coins. The agents then asked Yeatts to show them the coins that he had and Yeatts went to his booth and returned to the hallway carrying 8 to 10 coins. When asked if he had any more coins, Yeatts admitted that he did and also admitted that he had been told by another dealer that the other coins might be counterfeit.

Yeatts then returned to his booth, accompanied by one of the agents. That agent observed Yeatts attempt to hide some of the coins, which were in two stacks in a box on the floor of the booth. Yeatts pushed one stack to a corner of the box and removed only one stack, and then started to leave the booth. Yeatts took the second stack out of the box only after the agent pointed out that he had forgotten one stack. Yeatts took the coins, about 35 in all, into the hallway where Miller examined them and stated that 27 of them appeared to be counterfeit. Yeatts surrendered the 27 coins to the agents.

Subsequent testing of the coins by the United States Bureau of Mint disclosed that the coins were indeed counterfeit.[2]

Appellant filed a motion for judgment of acquittal notwithstanding the verdict on February 20, 1980. However, he failed to accompany his motion with a memorandum of law citing supporting authorities and allegations of fact relied upon and required by the local rules of the district court.[3] On March 27, 1980, the date of sentencing, appellant's counsel inquired about the status of the motion and the district court instructed him to supply the required memorandum by the following Friday, April 4, 1980. The court stated that it would reserve its ruling until it had reviewed appellant's supporting memorandum. There is no indication in the record that appellant ever filed such a memorandum. As a result of appellant's omission, no final order with respect to this motion was entered on the docket.

■ Because appellant declined to pursue at the trial court level his motion for judgment of acquittal notwithstanding the verdict by failing to comply with the local rules of the district court, appellant effectively abandoned his motion. See *United States v. Mireles*, 570 F.2d 1287, 1290 (5th Cir. 1978) (where defense counsel failed to request ruling on motion to suppress evidence or move for directed verdict of acquittal

2. The coins in question were all in resemblance and similitude of genuine United States gold coins in the following denominations: $1.00 gold pieces; $2.50 Liberties; $5.00 Indians; and $10.00 Indians.

3. United States District Court for the Northern District of Georgia Local Rule 9.1.

and no ruling was ever made, defendant effectively abandoned suppression motion). Failure to reach this issue, which is not properly before the Court, will not foster a manifest miscarriage of justice since, after carefully reviewing the record for plain error, we conclude that no plain error was committed. *See* Fed.R.Crim.P. 52(b). Even if we review the evidence under a less stringent standard of review, as we will demonstrate in our discussion of appellant's contentions regarding the sufficiency of the evidence, we conclude that appellant's conviction is fully supported by the evidence.

Appellant contends that because, under United States law, gold coins may no longer be minted, circulated, or recoined, nor may they be used to pay any obligation, gold coins are no longer coins of the United States within the meaning of 18 U.S.C.A. § 485.

■ We are aided in the interpretation of Section 485 by several principles of statutory construction. A federal criminal statute should be construed narrowly in order to encompass only that conduct that Congress so intended to criminalize. *Dunn v. United States*, 442 U.S. 100, 112, 99 S.Ct. 2190, 2191, 60 L.Ed.2d 743 (1979). A basic canon of statutory construction is that words should be interpreted as taking their ordinary and plain meaning. *Perrin v. United States*, 444 U.S. 37, 42, 100 S.Ct. 311, 314, 62 L.Ed.2d 199 (1980). We must assume that Congress used the words of the statute as they are commonly and ordinarily understood. *United States v. Porter*, 591 F.2d 1048, 1053 (5th Cir. 1979). A statute should ordinarily be interpreted according to its plain language, unless a clear contrary legislative intention is shown. *United States v. Apfelbaum*, 445 U.S. 115, 121, 100 S.Ct. 948, 952, 63 L.Ed.2d 250 (1980).

■ After carefully considering the language of Section 485, we conclude that counterfeit United States gold coins are within the scope of that section.

The word "coin" in Section 485, with respect to the counterfeiting of any coins in resemblance and similitude of any gold or silver United States coin, is not expressly qualified or restricted in such a manner as to require that the counterfeit coin be in resemblance or similitude of a coin which is a current United States coin or which is legal tender. However, paragraph one of that section specifically limits the scope of the statute, with respect to counterfeit *foreign* gold and silver coins, to coins "in resemblance or similitude of any foreign gold or silver coin current in the United States or in actual use and circulation as money within the United States."

We believe that Congress' failure to expressly restrict the scope of Section 485 with respect to counterfeit gold or silver United States coins to *current* coins or legal tender is significant. The language of the section indicates that Congress intended to cover the counterfeiting of any gold coin which was stamped or coined by a United States mint.[4] The coins at issue in this case clearly fall within the language of Section 485: "any coin ... in resemblance or similitude of any coin of a denomination higher than 5 cents ... coined at any mint or assay office of the United States." 18 U.S.C.A. § 485. The second paragraph of Section 485 does not require that United States coins be composed of a particular metal, nor are gold coins specifically excluded.

Yeatts argues that gold coins, which were formerly minted in the United States and then withdrawn from circulation by the Gold Reserve Act of 1934[5] are no longer legal tender and, therefore, no longer coins of the United States. Section 485, however, does not require that gold coins be current legal tender.

4. Former Section 277, 18 U.S.C. § 277 (1940), from which the present Section 485 is derived, prohibited the counterfeiting of "any coin or bars in resemblance or similitude of the gold or silver coins or bars which have been, or hereafter may be, coined or stamped at the mints and assay offices of the United States."

5. Gold Reserve Act of 1934, ch. 6, 48 Stat. 337 (codified in scattered sections of 12, 31 U.S.C. A.). *See* 31 U.S.C.A. § 440.

Title 18 U.S.C.A. § 486 prohibits the making, uttering or passing of any coins made of gold, silver, or any other metal or alloy of metals "intended for use as current money." This Circuit held that former Section 281 of Title 18, upon which the present Section 486 is based, did not repeal former Section 277 of Title 18, upon which the present Section 485 is based. *Curran v. Sanford*, 145 F.2d 229, 230 (5th Cir. 1944). This Court stated that former Sections 281 and 277 define similar but not identical offenses. Had Congress intended to restrict present Section 485 to "current money" of the United States, or to coins in actual use and circulation as money within the United States, or to legal tender, we believe that it would have so stated in the statute.[6]

▪ Appellant also argues that the application of the prohibitions of Section 485 to gold coins is unconstitutional. He contends that because gold coins are not current they are not subject to regulations under U.S. Const. Art. I, § 8, cl. 6, which empowers Congress to "provide for the Punishment of counterfeiting the Securities and current Coin of the United States." Appellant's argument is without merit. Article I, § 8, cl. 18, grants Congress the power to "make all laws which shall be necessary and proper for carrying into Execution" the specific legislative powers granted to Congress by Article I, § 8 itself. We hold that Congress had the constitutional power, under Art. I, § 8, cl. 6, and the necessary and proper clause, Art. I, § 8, cl. 18, to enact 18 U.S.C.A. § 485, thus prohibiting the counterfeiting of gold coins which are no longer in circulation as current coins. Congress had a rational basis for protecting the integrity

of non-current gold United States coins. Such coins have value in that the owner may redeem gold coins for current money. These coins also have historic and numismatic value.

To determine whether the evidence is sufficient to support a guilty verdict, we must view the evidence in the light most favorable to the Government, *Glasser v. United States*, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942), and all credibility choices must be considered in support of the jury verdict. *United States v. Conway*, 632 F.2d 641, 643 (5th Cir. 1980). The standard of review for the sufficiency of the evidence supporting a guilty verdict is whether a reasonably minded jury must necessarily entertain a reasonable doubt of the defendant's guilt. *United States v. Kelley*, 630 F.2d 302, 303 (5th Cir. 1980).

▪ Appellant contends that no intent to defraud on the part of appellant was proved. However, the record in this case reveals clear evidence of Yeatts' intent to defraud. Yeatts initially offered the counterfeit coins to Miller without admitting to Miller that they were counterfeit; it was only after Miller asked about the authenticity of the coins that Yeatts admitted that the coins were counterfeit. Additionally, Yeatts was evasive in response to questions posed by the Secret Service agents and attempted to conceal some of the counterfeit coins from them. These circumstances, particularly Yeatts' admission to Miller, offer sufficient evidence of appellant's intent to defraud.

▪ Appellant argues that the trial judge erred by giving a jury instruction that permitted the jury to consider evidence

---

**6.** *See United States v. Mock*, 143 F.Supp. 661, 663–64 (N.D.Cal.1956).

Section 485 was revised by Congress on June 25, 1948, ch. 645, 62 Stat. 708, and again on July 23, 1965, Pub.L. 89–91, 79 Stat. 257. On neither occasion did Congress choose to indicate that this section was restricted to current coins or legal tender. Pub.L. 89–91, the 1965 amendments, deleted "Gold or silver" preceding "Coins or bars" in the section catch line, changed the description of the United States coins covered in the first paragraph from gold

or silver coins to any coin of a denomination higher than five cents, and made minor structural changes in the second paragraph. The 1965 amendments were made in order to cover coins of any denomination in excess of five cents, thus including "clad" coins which are made of a copper core between layers of cupro-nickel. The purpose of those amendments was to expand the scope of Section 485 to include clad coins. H.R.Rep.No.509, 89th Cong., 1st Sess. 2, *reprinted in* [1965] U.S.Code Cong. & Ad.News 2299, 2310.

outside the record.[7] Appellant's argument is based on one portion of the instruction, taken out of context. The district court merely instructed the jurors that they could draw from the facts in evidence such reasonable inferences as they found justified in the light of experience. It is well settled that a jury may draw reasonable inferences from the evidence presented in the case. *See United States v. Gainey*, 380 U.S. 63, 85 S.Ct. 754, 13 L.Ed.2d 658 (1964). The district court specifically charged the jury to consider only the evidence admitted in the case, and further charged them not to consider any evidence to which an objection was sustained, which was ordered stricken from the record, or which may have been seen or heard outside the courtroom.

In reviewing the adequacy of a challenged jury instruction, this Court must view the charge in its entirety and determine whether, taken as a whole, the issues and the law presented to the jury were adequate. *United States v. Abravaya*, 616 F.2d 250, 251 (5th Cir. 1980); *United States v. Brooks*, 611 F.2d 614 (5th Cir. 1980). However, where, as here, no objection to the instruction was made at trial as required by Fed.R.Crim.P. 52(b), this Court may reverse only if plain error was present. *United States v. Abravaya, supra*, 616 F.2d at 251. The jury instructions were not in error and, taken as a whole, were clearly adequate.

AFFIRMED.

---

7. The trial judge gave the following jury instruction:

The evidence in the case consists of the sworn testimony of the witnesses, regardless of who may have called them, and it consists also of the exhibits received in evidence, regardless of who may have produced them.

Any evidence as to which an objection was sustained by the court, and any evidence ordered stricken by the court, must be entirely disregarded. Anything you may have seen or heard outside the courtroom is not evidence, and must be entirely disregarded.

You are to consider only the evidence in the case. But in your consideration of the evidence, you are not limited to the bald statements of the witnesses. In other words, you are not limited solely to what you see and hear as the witnesses testify. You are permitted to draw from the facts which you find have been proved, such reasonable inferences as you feel are justified in the light of experience.