**UNITED STATES of America,**
**Appellant,**

v.

**Richard FALVEY, a/k/a "Dick Foley,"**
**Defendant, Appellee.**

**No. 81–1616.**

United States Court of Appeals,
First Circuit.

Heard March 5, 1982.
Decided April 28, 1982.

Margaret D. McGaughey, Asst. U. S. Atty., Portland, Maine, with whom Richard S. Cohen, U. S. Atty., Portland, Maine, was on brief, for appellant.

Willie J. Davis, Boston, Mass., for defendant, appellee.

Before CAMPBELL, BOWNES and BREYER, Circuit Judges.

LEVIN H. CAMPBELL, Circuit Judge.

This case presents questions of first impression concerning the applicability of certain federal counterfeiting statutes to foreign coins. Richard Falvey, Anthony Webster, and Rudy Zoffoli were charged with violations of 18 U.S.C. §§ 485, 486, and with conspiracy. The indictment alleged that they had possessed with intent to defraud and had uttered counterfeit Krugerrands, which are gold coins current in South Africa but not in the United States. Falvey pleaded guilty to the possession charge, and Webster and Zoffoli went to trial in the United States District Court for the District of Maine. At the close of the government's case, the court granted the defendants' motions for judgments of acquittal on the ground that sections 485 and 486 did not reach counterfeiting conduct with respect to foreign coins not current or in actual use and circulation as money in the United States.

Falvey then brought motions to withdraw his guilty plea and to dismiss the indictment, based on the court's ruling with respect to his co-defendants. The government and Falvey stipulated that Krugerrands are neither current nor in actual use and circulation as money within the United States.[1] The district court granted the motions, incorporating its earlier ruling from the trial. The government then brought this appeal.

I.

18 U.S.C. § 485 currently reads as follows:

Whoever falsely makes, forges, or counterfeits any coin or bar in resemblance or similitude of any coin of a denomination higher than 5 cents or any gold or silver bar coined or stamped at any mint or assay office of the United States, or in resemblance or similitude of any foreign gold or silver coin current in the United States or in actual use and circulation as money within the United States; or

Whoever passes, utters, publishes, sells, possesses, or brings into the United States any false, forged, or counterfeit coin or bar, knowing the same to be false, forged, or counterfeit, with intent to defraud any body politic or corporate, or any person, or attempts the commission of any offense described in this paragraph—

Shall be fined not more than $5,000 or imprisoned not more than fifteen years, or both.

Falvey was charged with possession under the second paragraph. At first blush, this would seem to reach Krugerrands, as it refers to "any false, forged, or counterfeit coin or bar." As Chief Judge Gignoux recognized in his careful bench ruling, however, the earlier versions and legislative history of this statute make it clear that the scope of the second paragraph must be read identically with that of the first. We there-

---

1. While the government asserted in its brief and at oral argument before this court that it stipulated only that the coins are not current here, the record is quite clear that it also stipulated to the "use and circulation as money" provision.

fore affirm the decision below that the only foreign coins covered by the second paragraph are those "current ... or in actual use and circulation as money within the United States." [2]

Section 485 was last amended in 1965. Its various predecessor versions may be traced back to Act of April 21, 1806, ch. 49, § 1, 2 Stat. 404. The 1806 version clearly restricted the scope of the second part of the statute to that of the first:

[I]f any person shall falsely make, forge or counterfeit, or cause or procure to be falsely made, forged, or counterfeited, or willingly aid or assist, in falsely making, forging or counterfeiting, any gold or silver coins, which have been or which hereafter shall be coined at the mint of the United States, or who shall falsely make, forge, or counterfeit, or cause or procure to be falsely made, forged, or counterfeited, or willingly aid or assist in falsely making, forging, or counterfeiting any foreign gold or silver coins, which, by law now are or hereafter shall be made current, or be in actual use and circulation as money within the United States; or who shall utter, as true, any false, forged, or counterfeited coins of gold or silver, *as aforesaid,* for the payment of money, with intention to defraud any person or persons, knowing the same to be falsely made, forged or counterfeited; any such person, so offending, shall be deemed and adjudged guilty of felony, and being thereof convicted according to the due course of law, shall be sentenced to imprisonment, and kept at hard labour for a period not less than three years, nor more than ten years; or shall be imprisoned not exceeding five years, and fined not exceeding five thousand dollars.

(Emphasis added.) Throughout its long history and many changes, the statute had up until 1965 explicitly referred back to the first part in describing the coins covered by the second. *See* Act of March 3, 1825, ch. 65, § 20, 4 Stat. 121; Act of February 12, 1873, ch. 131, § 61, 17 Stat. 434; Act of January 16, 1877, ch. 24, 19 Stat. 223; Rev. Stat.U.S. § 5457 (2d ed. 1878); Criminal Code, Act of March 4, 1909, Pub.L.No. 350, ch. 321, § 163, 35 Stat. 1119; Criminal Code, Act of June 25, 1948, Pub.L.No. 772, ch. 645, § 485, 62 Stat. 708. It was recognized as early as 1832 that this statute did not reach the counterfeiting of foreign coins without limitation. *See* H.R.Doc.No. 214, 22d Cong., 1st Sess. (1832); H.R. Doc.No. 258, 23d Cong., 1st Sess. (1834).

Perhaps the most clearly worded version of the statute is from 1873:

[I]f any person or persons shall falsely make, forge, or counterfeit, or cause or procure to be falsely made, forged or counterfeited, or willingly aid or assist in falsely making, forging, or counterfeiting, any coin or bars in resemblance or similitude of the gold or silver coins or bars, which have been, or hereafter may be, coined or stamped at the mints and assay-offices of the United States, or in resemblance or similitude of any foreign gold or silver coin which by law is, or hereafter may be made, current in the United States, or are in actual use and circulation as money within the United States, or shall pass, utter, publish, or sell, or attempt to pass, utter, publish, or sell, or bring into the United States from any foreign place, or have in his possession, any *such* false, forged, or counterfeited coin or bars, knowing the same to be false, forged, or counterfeited, every person so offending shall be deemed guilty of felony, and shall, on conviction thereof, be punished by fine not exceeding five thousand dollars, and by imprisonment and confinement at hard labor not exceeding ten years, according to the aggravation of the offense.

(Emphasis added.) The "such," of course, limits the second part of the statute to those coins covered in the first part. It remained in the statute up to and including the 1948 version. While the wording changed slightly from 1873 through 1948, there was never any indication of an inten-

---

**2.** As the parties stipulated that Krugerrands did not meet either of these requirements, we are not presented with the question of what might be needed to satisfy them.

tion to change this function of the word "such."

In 1877, for example, the statute was changed to read as follows:

> Every person who falsely makes, forges, or counterfeits, or causes or procures to be falsely made, forged, or counterfeited, or willingly aids or assists in falsely making, forging, or counterfeiting any coin or bars in resemblance or similitude of the gold or silver coins or bars which have been, or hereafter may be, coined or stamped at the mints and assay-offices of the United States, or in resemblance or similitude of any foreign gold or silver coin which by law is, or hereafter may be, current in the United States, or are in actual use and circulation as money within the United States, or who passes, utters, publishes, or sells, or attempts to pass, utter, publish, or sell, or bring into the United States from any foreign place, knowing the same to be false, forged, or counterfeit, with intent to defraud any body politic or corporate, or any other person or persons whatsoever, or has in his possession any *such* false, forged or counterfeited coin or bars, knowing the same to be false, forged or counterfeited, with intent to defraud any body politic or corporate, or any other person or persons whatsoever, shall be punished by a fine of not more than five thousand dollars, and by imprisonment at hard labor not more than ten years.

(Emphasis added.) This change was intended solely to add the intent to defraud requirement. *See* 4 Cong.Rec. 4232 (1876); 5 Cong.Rec. 521 (1877). While the wording was thereby made considerably more awkward, we read the word "such" as still performing the same limitation function as it did prior to 1877. Only very minor changes were made in 1909 as part of the general revision and codification of the criminal laws. *See* S.Rep.No. 10, 60th Cong., 1st Sess. (1908); H.R.Rep.No. 2, 60th Cong., 1st Sess. (1908). Again, only minor

changes were made (including division into paragraphs) in 1948, as part of the enactment of title 18 of the United States Code into positive law. *See* H.R.Rep.No. 304, 80th Cong., 1st Sess. (1947); S.Rep.No. 1620, 80th Cong., 2d Sess. (1948). As of 1948, then, the statute read as follows:

> Whoever falsely makes, forges, or counterfeits any coin or bars in resemblance or similitude of the gold or silver coins or bars coined or stamped at the mints and assay offices of the United States, or in resemblance or similitude of any foreign gold or silver coin current in the United States, or are in actual use and circulation as money within the United States; or
>
> Whoever passes, utters, publishes or sells, or attempts to pass, utter, publish, or sell, or bring into the United States, from any foreign place, knowing the same to be false, forged, or counterfeit, with intent to defraud any body politic or corporate, or any person, or possesses any *such* false, forged, or counterfeited coin or bars, knowing the same to be false, forged, or counterfeited, with intent to defraud any body politic or corporate, or any person—
>
> Shall be fined not more than $5,000 or imprisoned not more than fifteen years, or both.

(Emphasis added.)

Thus, up until the 1965 amendment, this statute had for over 150 years expressly limited its scope with respect to foreign coins to those current or in actual use and circulation as money within the United States.[3] In 1965, section 485 was amended by the Coinage Act, July 23, 1965, Pub. L.No. 89–81, § 211(a), 79 Stat. 257. The purpose of this act was to authorize the minting and use of non-silver coins in order to conserve the nation's silver supply. *See* S.Rep.No. 317, 89th Cong., 1st Sess. 1 (1965); H.R.Rep.No. 509, 89th Cong., 1st Sess. 1 (1965), U.S.Code Cong. & Admin. News 1965, p. 2299. Section 485 was

---

**3.** In fact, the 1825 version was even stricter, referring only to foreign coins current here. *See United States v. Gardner*, 35 U.S. (10 Pet.) 618, 9 L.Ed. 556 (1836). The 1873 version reinserted the use and circulation provision.

changed because it had theretofore applied only to gold and silver coins; the change made it applicable to the new United States coins authorized by the Coinage Act. Thus, the House report states,

> Section 485 of title 18 of the United States Code makes it a felony to counterfeit silver coins. Section 211 of the bill amends it to cover coins of any denomination in excess of 5 cents, thus covering coins of the same denomination as existing law, but describing them in terms which make their composition irrelevant.

The Senate report also makes this clear:

> Section 211(a) would make necessary changes in the counterfeiting laws to assure they will be applicable to the new coins in the same terms as they were applicable to the present subsidiary coins. As in the case of current coins, the counterfeiting of the new coins will carry penalties of a fine of $5,000 or 15 years' imprisonment, or both.

These are the only references to section 485 in the legislative history.[4] From this slender reed, the government constructs its argument that in 1965, Congress intended, in a minor provision of an act with an entirely different purpose, to make a major change in a statute dating back to 1806. We cannot accept such an argument.

▌ Section 485 was, to be sure, rather extensively rephrased in 1965. But in the complete absence of any evidence that the rewording was aimed at bringing about substantive changes other than the one expressly reflected in the legislative history, the most plausible explanation of the revised phraseology is that it was simply intended to eliminate the awkwardness of expression that was introduced in 1877 and carried through the 1948 version. The draftsman, we surmise, merely sought to "clean up the language"—falling into the

trap, as can easily occur where statutory language is rephrased, of unintentionally suggesting a substantive change. In light of the history of this statute and the absence of any indication of an intention in 1965 to change its scope, it would be anomalous to read the amended statute as broader in coverage than its predecessors (except, of course, with respect to non-silver U.S. coins, the change intended in the Coinage Act). Cases construing changes in statutory language tend to rely in part on evidence of congressional intent or at least attention to the change in deciding whether to give the change its literal effect. *See generally Edmonds v. Compagnie Generale Transatlantique,* 443 U.S. 256, 99 S.Ct. 2753, 61 L.Ed.2d 521 (1979); *Bush v. Oceans International,* 621 F.2d 207 (5th Cir. 1980); *Pena-Cabonillas v. United States,* 394 F.2d 785 (9th Cir. 1968). In the absence of these factors, courts are not bound to read a statute literally in a manner entirely at odds with its history and apparent intent.

Indeed, even the present language of section 485 taken alone does not compel the conclusion pressed by the government. While the statute now literally punishes possession of "any" counterfeit coin, certainly some limitation must be read into it: we have found no evidence throughout the history of the statute of an intention to punish counterfeit ancient Greek or Roman coins, for example. *Cf. United States v. Gertz,* 249 F.2d 662, 664–65 (9th Cir. 1957). Given the necessity of reading some limitation into the second paragraph, it is most reasonable, especially in light of the history of the statute, to find that limitation in the first paragraph of the same statute.[5]

## II.

▌ Section 486 presents a different, although related, problem of construction. It currently reads as follows:

---

4. While the government might conceivably have access to sources of legislative history not publicly available, it has not presented any such evidence in support of its argument concerning the intent of Congress in its 1965 amendment of section 485, and we therefore assume that none is extant.

5. In a recent case, the Fifth Circuit implicitly assumed that the scope of the second paragraph of section 485 was identical to that of the first. *See United States v. Yeatts,* 639 F.2d 1186, *cert. denied,* 452 U.S. 964, 101 S.Ct. 3115, 69 L.Ed.2d 976 (1981). The court noted that the 1965 amendment made "minor structural changes" in the second paragraph. *Id.,* at 1190 n.6.

Whoever, except as authorized by law, makes or utters or passes, or attempts to utter or pass, any coins of gold or silver or other metal, or alloys of metals, intended for use as current money, whether in the resemblance of coins of the United States or of foreign countries, or of original design, shall be fined not more than $3,000 or imprisoned not more than five years, or both.

18 U.S.C. § 486 (enacted, Criminal Code, Act of June 25, 1948, Pub.L.No. 772, ch. 645, § 486, 62 Stat. 709). The issue presented is whether the coins covered by section 486 must be "intended for use as current money" in the United States, or whether their currency anywhere is sufficient. Again, we agree with the district court that the former construction is correct, and that on the facts stipulated below, the statute does not reach Falvey's conduct.

Section 486 may be traced back substantially unchanged through a 1909 codification, Criminal Code, Act of March 4, 1909, Pub.L.No. 350, ch. 321, § 167, 35 Stat. 1120, and an 1873 codification, Rev.Stat.U.S. § 5461, to its enactment in 1864, Act of June 8, 1864, ch. 114, 13 Stat. 120. We have been unable to find any version prior to this, nor is there any indication in the legislative history that the 1864 version was an amendment of a previous statute. We therefore assume that this is indeed its earliest appearance. The 1864 statute reads as follows:

[I]f any person or persons, except as now authorized by law, shall hereafter make, or cause to be made, or shall utter or pass, or attempt to utter or pass, any coins of gold or silver, or other metals or alloys of metals, intended for the use and purpose of current money, whether in the resemblance of coins of the United States or of foreign countries, or of original design, every person so offending shall, on conviction thereof, be punished by fine not exceeding three thousand dollars, or by imprisonment for a term not exceeding five years, or both, at the discretion of the court, according to the aggravation of the offense.

As in the present version, there is no explicit qualifier of the phrase "current money." No substantive changes were made with respect to the statute's scope in any subsequent versions. See S.Rep.No.10, 60th Cong., 1st Sess. (1908); H.R.Rep.No.2, 60th Cong., 1st Sess. (1908); H.R.Rep.No.304, 80th Cong., 1st Sess. (1947); S.Rep.No.1620, 80th Cong., 2d Sess. (1948). We may, therefore, look to the intention of Congress in the original 1864 enactment in order to understand the scope of the present section 486.

For several reasons, we believe that Congress intended the statute only to reach coins intended for use as current money in the United States. While the legislative history is sparse, what little we have been able to uncover evinces only a concern with coins used in the United States. The bill was referred to in Congress as one "to punish and prevent the counterfeiting of coin *of the United States*," 136 Cong.Globe, 38th Cong., 1st Sess. 2707 (1864) (emphasis added), and it was captioned as such in Statutes at Large, 13 Stat. 120. There is no reference to applicability to foreign money as such. Rather, the primary concern of Congress seems to have been with the prohibition of private systems of coinage created for use in competition with the official United States coinage. See *United States v. Gellman*, 44 F.Supp. 360, 364 (D.Minn. 1942); cf. *Curran v. Sanford*, 145 F.2d 229 (5th Cir. 1944) (sections 485 and 486 define separate offenses).

This conclusion is buttressed by the "except as authorized by law" proviso, which in context seems to refer to the possibility that some entity other than the federal government might be permitted by law to issue and use unofficial coinage. It is also supported by the complete absence of an intent to defraud requirement. It is unlikely that Congress would punish the use of unofficial coins of another country here in the United States in the absence of any intent to defraud, unless those coins were being used as a medium of exchange here. A comparison with other statutes, where Congress specifically made criminal the making and uttering of foreign monetary

instruments not necessarily in circulation here, is also instructive, for they do contain express intent to defraud requirements. *See* 18 U.S.C. §§ 478, 479, 482, 483. They were also motivated in part by congressional concern that this country was being used as a sort of safe harbor in which counterfeit foreign paper was being printed; this was especially troublesome because some official foreign monetary instruments were actually printed here in the United States. *See* H.R.Rep.No.1329, 48th Cong., 1st Sess. (1884). There is no evidence of such international concerns behind section 486.

The very broad implications of the government's suggested reading of section 486 also support our conclusion. We think it unlikely, for example, that Congress intended to proscribe the making of coins "of original design" that were not intended for use as money in the United States. Otherwise, we would be placed in the position of protecting the integrity of foreign currency from unofficial coinage that did not even resemble it, and without any direct relationship to our own monetary system. While Congress could do this if it wished, we are loath to adopt such an expansive reading of this statute in the absence of even a glimmer of supporting legislative history. The government's reading would also imply that the "except as authorized by law" proviso referred to foreign, as well as domestic, law. Again, this result seems unlikely, and there is no indication of congressional intent in its favor. Finally, we are not unmindful that criminal statutes are normally to be construed narrowly, at least when such a construction comports with the intent of Congress as we can divine it. *See, e.g., Perrin v. United States*, 444 U.S. 37, 49 n.12, 100 S.Ct. 311, 317 n.12, 62 L.Ed.2d 199 (1979). We therefore believe that section 486 was construed correctly by the district court.

*Affirmed.*