USCA1 Opinion

 

 United States Court of Appeals For the First Circuit ____________________ No. 96-2188 UNITED STATES OF AMERICA, Appellee, v. PEDRO RIVERA, Defendant, Appellant. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF PUERTO RICO [Hon. Hector M. Laffitte, U.S. District Judge] ___________________ ____________________ Before Torruella, Chief Judge, ___________ Coffin, Senior Circuit Judge, ____________________ Selya, Boudin, Stahl and Lynch, Circuit Judges. ______________ ____________________ Rafael Castro Lang and Rachel Brill for appellant. __________________ ____________ Andrew C. Mergen with whom Anne S. Almy, Charles A. De Monaco, ________________ ____________ ____________________ Michael J. Woods, David C. Shilton, Peter A. Appel, Lisa E. Jones, ________________ ________________ ______________ _____________ Lois J. Schiffer, Assistant Attorney General, Environment & Natural ________________ Resources Division, Guillermo Gil, United States Attorney, Jorge E. _____________ ________ Vega-Pacheco, Assistant United States Attorney, and Miguel A. Pereira, ____________ _________________ Assistant United States Attorney, were on brief for appellee. James F. Moseley, Patrick J. Bonner, and Robert B. Parrish on ________________ _________________ _________________ brief for Maritime Law Association, amicus curiae. ____________________ OPINION EN BANC ____________________ ____________________ December 2, 1997 ____________________ COFFIN, Senior Circuit Judge. Appellant Pedro Rivera COFFIN, Senior Circuit Judge ______________________ appeals his conviction under 46 U.S.C. 10908 for knowingly sending a vessel to sea in an unseaworthy condition likely to endanger the life of an individual. He alleges that his prosecution was invalid, that the evidence was insufficient, and various trial errors. After a divided panel of this court affirmed the conviction, we ordered en banc hearing on the __ ____ statutory and sufficiency issues. We now find the prosecution to be proper, but conclude that the evidence adduced was insufficient to establish that Rivera knew that the vessel's condition was "likely to endanger the life of an individual." The judgment of conviction therefore must be reversed.1 I. Background __________ This case arises out of a major oil spill that occurred during the night of January 6-7, 1994 off the coast of San Juan, Puerto Rico. The accident occurred after the tow wire connecting the tugboat Emily S. to the barge Morris J. Berman parted; the ________ ________________ barge subsequently ran aground, spilling its oily cargo. Appellant Rivera was the general manager of the Bunker Group, which managed the tugboat. On the night of the accident, Rivera had directed the crew of the Emily S. to transport the Morris J. Berman from San Juan ________ _________________ to Antigua. Although various crew members of the Emily S. _________  ____________________ 1 The asserted trial errors were not certified for en banc __ ____ review, and the panel's rejection of them therefore is not before us. Because our disposition renders those errors moot, we do not need to re-adopt that portion of the withdrawn opinion.  -2- previously had told Rivera of the towing wire's seriously deteriorated condition, and although a new wire had been ordered and was available,2 the voyage proceeded with the old wire in place. Shortly after the vessel left San Juan Harbor, the wire parted. Captain Roy McMichael repaired the wire, but did not use a thimble, a device that prevents abrasion in a repaired section of wire. Several hours later, the wire parted again; the barge drifted off and went aground. Rivera was found guilty by a jury of violating 46 U.S.C.  10908 for knowingly sending the Emily S. to sea in an unseaworthy ________ condition likely to endanger life.3 We review his conviction on both statutory and evidentiary grounds. II. Interpretation of 46 U.S.C. 10908 ___________________________________ The first question certified for en banc consideration is __ ____ one of statutory interpretation: was Rivera's prosecution under section 10908 flawed because certain procedural prerequisites were not met? Section 10908 provides as follows: A person that knowingly sends or attempts to send, or that is a party to sending or attempting to send, a vessel of the United States to sea, in an unseaworthy state that is likely to endanger the life of an individual, shall be fined not more than $1,000, imprisoned for not more than 5 years, or both.  ____________________ 2 The wire apparently was not installed before the trip because workers were unavailable as a result of the Three Kings' holiday.  3 The jury also convicted Rivera for knowingly violating a Coast Guard regulation, see 33 U.S.C. 1232(b)(1), but the ___ district court later granted Rivera's motion for acquittal on that count. -3- This is the final provision in Chapter 109 of Title 46. The chapter, entitled "Proceedings on Unseaworthiness," focuses primarily on procedures to be used by seamen to report unseaworthy vessels. Rivera maintains that these procedures must be instituted before a criminal prosecution may be brought under section 10908. The government argues that section 10908 is a freestanding statute that on its own provides a basis for criminal liability. To resolve this dispute, we must confront three major analytical issues: (1) to what extent should the context of section 10908 within Chapter 109 guide our interpretation of its language? (2) what role should be played by legislative history? (3) is our interpretation "palpably unreasonable"? We address each of these substantial issues in Section A below, and briefly note in Section B inconsistencies in this area of law that we believe deserve the attention of Congress. A. An Examination of Context, Legislative History, and ________________________________________________________ Reasonableness. _______________ We enter our analysis by noting that the interpretation of a statute presents a purely legal question, and thus our review is de novo. See Strickland v. Commissioner, 96 F.3d 542, 545 (1st __ ____ ___ __________ ____________ Cir. 1996). (1) Plain Language or Beyond? The well established approach _________________________ to statutory construction begins with the actual language of the provision, Landreth Timber Co. v. Landreth, 471 U.S. 681, 685 ____________________ ________ (1985). When the "plain meaning" is clear on its face, "the sole -4- function of the courts is to enforce it according to its terms."  Caminetti v. United States, 242 U.S. 470, 485 (1917); United _________ ______________ ______ States v. Bohai Trading Co., 45 F.3d 577, 581 (1st Cir. 1995). ______ __________________ From one vantage point, this is the beginning and the end of our analysis. On its face, there is nothing unclear about the meaning of section 10908. Its language does not limit its application to "a person" against whom Chapter 109 proceedings have been brought. Rather, it sets out three specific requirements for finding a person culpable: (1) knowingly sending a vessel to sea; (2) knowing that the vessel was in an unseaworthy condition; and (3) knowing that the unseaworthiness was such that it would likely endanger life. Straightforward application of the plain language rule leaves no place for the procedural prerequisites asserted by Rivera.  There is, however, a respectable contrary view that reading Chapter 109 as a whole leads to a different understanding of section 10908. From this perspective, section 10908 is designed to enhance the complaint procedures outlined in the preceding sections by criminalizing a knowing attempt to take a dangerous vessel to sea after an official finding of unseaworthiness or the lodging of a complaint pursuant to those sections.4  ____________________ 4 Chapter 109 was enacted in 1983 as Public Law 98-89. It provides for the filing of a complaint with the master of a vessel by the "chief and second mates or a majority of the crew," before a voyage takes place, if the vessel appears unfit to the seaman, 46 U.S.C. 10902(a)(1). A master receiving such a complaint is then required to apply to a district court of the United States for the appointment of "3 experienced and skilled marine surveyors to examine the vessel for the defects or insufficiencies complained of." Id.; id. at 10903(a). After ___ ___ -5- Rivera maintains that this contextual interpretation of section 10908 is supported by a reading of the statutory provisions from which Chapter 109 is derived, 46 U.S.C. 653- 658. Those provisions, originally enacted in 1840, were amended in 1983 for the primary purpose of re-organizing the then- existing maritime legislation on the safety of vessels and protection of seamen into a more comprehensible and easily administered scheme. See H.R. Rep. No. 98-338, at 113 (1983), ___ reprinted in 1983 U.S.C.C.A.N. 924, 925. Former section 658 ____________ consisted of four sentences, the next-to-last of which, with minor revision, became new section 10908.5  ____________________ their investigation, the surveyors must make a report stating whether the vessel is fit and, if not, must make appropriate recommendations as to how to render the vessel seaworthy. Id. at ___ 10903(a). The district court then passes upon the report and renders its judgment, which must be complied with by the master and crew of the vessel. Id. at 10903(b). The remaining ___ sections of Chapter 109 detail further consequences: section 10905 provides for the filing of complaints in foreign ports; section 10906 provides for the discharge of the crew upon a finding of the vessel's unsuitability; section 10907 prohibits a master from interfering with a seaman's right to file a complaint under this chapter. Finally, section 10908, the provision at issue here, provides for criminal sanctions. 5 The opening two sentences of section 658 were linked in content to the preceding provisions on the appointment of vessel inspectors by consular officials in foreign ports, and specified when such an official should discharge a crew on account of unseaworthiness. The third sentence began as follows: If any person knowingly sends or attempts to send or is party to the sending or attempting to send an American ship to sea, in the foreign or coastwise trade, in such an unseaworthy state that the life of any person is likely to be thereby endangered, he shall, in respect of each offense, be guilty of a misdemeanor, and shall be punished by a fine not to exceed $1,000 or by imprisonment not to exceed five years, or both, . . . . -6- Rivera points particularly to the word "such" in the final portion of section 658 -- the reference to sending a ship to sea in "such an unseaworthy state" -- as evidence that criminal such liability was intended only when a finding of unseaworthiness as specified in the prior sections was made. Although that portion of section 658 was separately codified as section 10908 as part of the 1983 amendments, and the word "such" was deleted, Rivera maintains that the context makes clear that the focus on unseaworthiness remained the same: criminal liability under section 10908 is applicable only when unseaworthiness is found pursuant to the preceding procedural mechanisms. We have difficulty drawing so much from the context here. While cognizant of "the cardinal rule that a statute is to be read as a whole . . . , since the meaning of statutory language, plain or not, depends on context," Conroy v. Aniskoff, 507 U.S. ______ ________ 511, 515 (1993) (citations omitted), we gain no insight from the surrounding text in this instance. Indeed, the relevant "context" is subject to different interpretations. Rivera argues that the backdrop is a multi-part procedural scheme for making determinations of unseaworthiness based on claims brought primarily by seamen. The government takes a broader view, describing the context simply as a set of provisions concerning unseaworthiness, with the criminal prosecution serving as an  ____________________ The next clause of the sentence provided a defense to the violation based on reasonableness. -7- appropriately harsh penalty for a limited category of individuals who knowingly put lives in jeopardy. Both of these frameworks are consistent with what we see as the overall purpose of the legislation -- to protect seamen -- and we therefore find no aid to construction in the provisions surrounding section 10908.6 Nor does a focus on the word "such," as Rivera urges, move us beyond the plain language. Although we believe the use of "such" in the old statute appears almost certainly to look forward to the extent of unseaworthiness necessary to trigger liability, rather than back to a preceding finding, there is no room for argument that the language in the recodified provision is ambiguous. Taking section 10908 at face value, without limitations, avoids any uncertainty.7  ____________________ 6 Context plays a larger role when a literal reading of the language at issue would do violence to the overall scheme. See ___ United States v. Falvey, 676 F.2d 871, 875 (1st Cir. 1982) _____________ ______ ("[C]ourts are not bound to read a statute literally in a manner entirely at odds with its history and apparent intent.")  Construing section 10908 as a stand-alone provision not only supports Chapter 109's overall purpose of protecting seamen but also promotes Congress's apparent intent to increase responsibility for life-threatening accidents. See infra at 11.  ___ _____ 7 This is not unlike the conflict between Justices Brennan and Powell in Maine v. Thiboutot, 448 U.S. 1 (1980). Justice _____ _________ Brennan's majority opinion held that the phrase "and laws" in 42 U.S.C. 1983 encompassed violations of all federal statutory as well as constitutional laws, while Justice Powell in dissent asserted that the context clearly confined coverage of the provision to, at most, statutes providing specifically for equality of rights. As did the majority there, we think the better approach, in the absence of clear guidance to the contrary, is to accept the provision as written, without reading in unstated limitations.  -8- Our conviction that we should not look beyond the plain language of section 10908 is only strengthened when we examine both the limited legislative history of the provision and the rationality of this interpretation. (2) The Role of Legislative History. Keeping in mind that ________________________________ resort to legislative history typically is inappropriate when the meaning of a statute is plainly discernible from its words, see ___ Laracuente v. Chase Manhattan Bank, 891 F.2d 17, 23 (1st Cir. __________ _____________________ 1989), we engage in this discussion solely to reinforce our conclusion that this case is best resolved through reliance on the plain language rule. In a case such as this, where the "statute's text is encompassing, clear on its face, and productive of a plausible result," State of Rhode Island v. _______________________ Narragansett Indian Tribe, 19 F.3d 685, 698 (1st Cir. 1994), our _________________________ inquiry, at most, should be aimed at determining "`whether there is a "clearly expressed legislative intention" contrary to [the statutory] language, which would require [the court] to question the strong presumption that Congress expresses its intent through the language it chooses.'" Id. (quoting INS v. Cardoza-Fonseca, ___ ___ _______________ 480 U.S. 421, 432 n.12 (1987)). The signals here are mixed. While the stated purpose of the legislation was simply to recodify in an organized fashion the then-existing law relating to the safety of vessels and protection of seamen8 -- suggesting that no changes were intended  ____________________ 8 House Report No. 98-338 states: -9- -- the accompanying House Report anticipated questions about substantive revisions: [T]he bill . . . does in fact make a great many _______________________________________________________ substantive changes to the present law. Those changes _______________________________________ are all either minor changes, adjustments, or modifications, or they are more significant changes to _____________________________________ which the Committee received no objection and which the Committee believed would enhance the clarity and effectiveness of the law and the [sic] generally accepted by the industry. Thus, if a comparison of the language of this bill with the existing law shows that a substantive change has resulted, it should be ______________ understood that that change was intended by the _______________________________________________________ Committee. The Committee intends and hopes that the _________ interpretation of the maritime safety laws as codified and enacted by this bill will be based on the language of the bill itself. The bill, as reported, is based on that premise. There should, therefore, be little or no occasion to refer to the statutes being repealed in order to interpret the provisions of this bill. The Committee also feels, as the courts have held, that the literal language of the statute should control the disposition of the cases. There is no mandate in _______________________ logic or in case law for reliance on legislative _______________________________________________________ history to reach a result contrary to the plain meaning _______________________________________________________ of the statute, particularly where that plain meaning ______________ is in no way unreasonable. H.R. Rep. No. 98-338, at 120 (1983), reprinted in 1983 ______________ U.S.C.C.A.N. 924, 932 (emphasis added). Thus, the argument that Chapter 109 must be interpreted to contain exactly the same content as the provisions it replaced is met head-on by the report's statement to the contrary.  ____________________ The ultimate aim of this legislation is three fold: to make maritime safety and seamen protection law easier for the Coast Guard to administer, to make it less cumbersome for the maritime community to use, and to make it more understandable for everyone involved. H.R. Rep. No. 98-338, at 113, reprinted in 1983 U.S.C.C.A.N. 924, ____________ 925. -10- Additionally, as the government asserts, it is by no means clear that former section 658 required a civil adjudication of unseaworthiness as a prerequisite to a criminal prosecution. Although it was included within the same section as instructions for the discharge or retention of a crew in a foreign port after a survey of vessel conditions, the criminal provision was phrased generally and did not reference a civil adjudication of unseaworthiness. As we noted earlier, see supra at 8, the use of ___ _____ the word "such" in section 658 in all likelihood did not refer back to "such" a prior civil adjudication. Whatever the intended meaning of section 658, it seems to us that the recodification's affirmative separation of section 10908 from other provisions, and deletion of the word "such," reflect a deliberate decision that liability under the section is to be distinct from, and not dependent upon, compliance with Chapter 109's civil provisions. See Cardoza-Fonesca, 480 U.S. at 442-43 ___ _______________ ("Few principles of statutory construction are more compelling than the proposition that Congress does not intend sub silentio ___ ________ to enact statutory language that it has earlier discarded in favor of other language.") (citation omitted). The suggestion that Congress was strengthening the sanction imposed is reinforced by yet another change. Section 658 included defenses to criminal liability based on reasonableness, specifying that guilt and punishment would not attach if the individual charged with sending off an unseaworthy vessel proves that either he used all reasonable means to insure her being sent to sea in a seaworthy state, or -11- that her going to sea in an unseaworthy state was, under the circumstances, reasonable and justifiable . . . . Elimination of these defenses strikes us as far from insignificant, contributing to our sense that Congress intended to clarify and to tighten the obligation of those in control of vessels to prevent life-threatening accidents.  We thus find no unequivocal statement of legislative intent that would permit us to insert a limitation where none exists in the language of section 10908.9  ____________________ 9 We briefly note two other arguments made in support of Rivera's position. First, Rivera asserts that the competing interpretations of section 10908 warrant resort to the rule of lenity, which "commands that genuine ambiguities affecting a criminal statute's scope be resolved in the defendant's favor," United States v. Bowen, Nos. 96-2289, 90, slip op. at 15 (1st _____________ _____ Cir. Sept. 5, 1997). The rule is triggered only when, "`at the end of a thorough inquiry, the meaning of a criminal statute remains obscure,'" Id. (quoting United States v. O'Neil, 11 F.3d ___ _____________ ______ 292, 301 n.10 (1st Cir. 1993)). As we have discussed, this is not such a case. The plain language of section 10908 is not ambiguous, and the rule of lenity is therefore inapplicable. Second, the Maritime Law Association of the United States contends in its amicus brief that the government's interpretation of section 10908 must be wrong because it will adversely affect the long-standing right of vessel owners to utilize the Limitation of Vessel Owner's Liability Act, 46 U.S.C. 181-189.  Under the Act, damages claims against a vessel owner following an accident may be limited to the value of the vessel and freight on board if the mishap occurred without the privity or knowledge of the owner. See generally Hercules Carriers, Inc. v. Claimant ___ _________ _______________________ ________ State of Florida, 768 F.2d 1558, 1563-64 (11th Cir. 1985). ________________ The MLA suggests that the prospect of criminal liability under section 10908 will chill the use of the Limitation Act out of fear that an adverse finding under that provision would be used as prima facie evidence of the crime. The two statutes, _____ _____ however, feature different standards of proof and different burdens of persuasion; the greater protections accorded criminal defendants guarantee that a decision against a vessel owner in a limitation proceeding will not establish a "prima facie" criminal case under section 10908. Moreover, at least one other criminal provision involving negligent conduct by ship officers and owners apparently has existed side-by-side with the Limitation Act for -12- (3) An absurd result? It is a common occurrence in the law _________________ that black-and-white principles have an associated set of grey areas. Such is the case with the plain language rule. Though a solid anchor of statutory construction, it is not without exceptions, even in the absence of explicitly contrary legislative history. We have recognized that a "provision's plain meaning must govern its application, unless a palpably ______ unreasonable outcome would result," Massachusetts v. Blackstone _____________ __________ Valley Elec. Co., 67 F.3d 981, 986 (1st Cir. 1995) (emphasis _________________ added); see also Sullivan v. CIA, 992 F.2d 1249, 1252 (1st Cir. ___ ____ ________ ___ 1993) ("Courts will only look behind statutory language in the rare case where a literal reading must be shunned because it would produce an absurd outcome, . . . or when the legislature has otherwise blown an uncertain trumpet.") (citations omitted). Rivera contends that this is such a rare case. He asserts that the imposition of criminal sanctions without the necessary prerequisites "will convert untold numbers of unsuspecting persons into prospective criminals," and offers the fact that the provision has never before been enforced to demonstrate the injustice of upholding a prosecution that was not preceded by an administrative finding of unseaworthiness. Our view, to the contrary, is that the provision is sufficiently limited in scope to eliminate the specter of thousands of prosecutions based on wide-ranging claims of unseaworthiness, and that irrational results will come not from  ____________________ some time. See 18 U.S.C.A. 1115 (listing numerous cases). ___ -13- application of section 10908 in isolation but instead would come from requiring that the complaint procedure be completed before the filing of criminal charges. To focus on the many relatively minor forms of unseaworthiness, as Rivera does in projecting a flood of prosecutions, is to seize on only a part of the definition of the crime. The criminal provision requires knowledge not only that the vessel is unseaworthy but also that it is afflicted with a defect that is "likely to endanger" life. Our discussion in Section III, infra, demonstrates that run-of- _____ the-mill unseaworthiness cases will not fall within this embrace. On the other hand, if growing numbers of individuals are prosecuted and convicted under the required standard, we see nothing inconsistent with the apparent safety objective of Congress. As for the logic of a civil prerequisite, it seems that an uneven enforcement of law would result. If the crew and officers of a vessel were intimidated or unknowing, they might not bring to light egregious circumstances of unseaworthiness that others might have discovered and reported. We think it irrational to posit that a prosecution for the dangerous conduct proscribed by section 10908 could be barred simply because a ship owner or other potential defendant was able to prevent a civil proceeding through deception or strong-arm tactics. The Third Circuit, faced with a similar question under the Clean Water Act, aptly observed that "we see no reason why the Government should be hampered by prerequisites to seeking criminal sanctions under the -14- Act. . . . Although continued discharges after notification could be one way for the government to prove scienter, it is certainly not the only way to establish willful violations," United States _____________ v. Frezzo Bros., Inc., 602 F.2d 1123, 1126 (3d Cir. 1979).10 __________________ Nor does the novelty of this prosecution suggest to us that it is unfair or absurd. The prior lack of reported prosecutions under section 10908 or its predecessor may be a function of the fact that its coverage is narrow and that other provisions also reach aspects of the conduct that is actionable under it. Section 1115 of Title 18, for example, makes it a crime for any person employed on a vessel, or the owner or charterer of the vessel, to destroy "the life of any person" through misconduct, negligence, or inattention to duties. A person who operates a vessel in a grossly negligent manner "that endangers the life, limb, or property of a person" commits a misdemeanor under 46 U.S.C. 2302(b). Prosecutors often have a range of statutory choices in bringing charges, and the historical neglect of section 10908 and its predecessor, section 658, may reflect only that it was less obvious than other overlapping statutes because  ____________________ 10 The defendants in Frezzo Bros. argued that the ____________ Environmental Protection Agency could seek criminal remedies only after first giving notice of the alleged violations of the act or instituting a civil action. 602 F.2d at 1124. They also contended that a "willful" violation of the Clean Water Act could be established only where a party given notice of its violations continued polluting. The Third Circuit rejected these contentions and held that the prosecutorial discretion of the government was not bound by civil proceedings where "nothing in the text . . . compels the conclusion that prior written notice, other administrative or civil remedies are prerequisite to criminal proceedings under the Act." Id. at 1126.  ___ -15- of its placement at the end of a provision primarily concerned with administrative procedures. See United States v. Nippon ___ ______________ ______ Paper Indus. Co., 109 F.3d 1, 6 (1st Cir. 1997), petition for ________________ _____________ cert. filed, 65 U.S.L.W. 3839 (U.S. June 13, 1997) (No. 96-1987) ___________ (novel use of a statute is not alone a basis for reversing a conviction).  In sum, we cannot say that punishing a responsible person for knowingly sending a vessel to sea in such a condition as to endanger life is so "palpably unreasonable," Blackstone Valley _________________ Elec. Co., 67 F.3d at 986, "difficult to fathom," United States _________ _____________ v. Indelicato, 97 F.3d 627, 629 (1st Cir. 1996) (citation __________ omitted), or "absurd," Sullivan, 992 F.2d at 1252, as to trump ________ the unvarnished language of section 10908.11 C. Matters for Congressional Attention. ___________________________________ Although we are confident that our conclusion is ordained by the applicable principles of statutory construction, we recognize that it has some puzzling ramifications. Section 10908 does not apply to fishing vessels or yachts, apparently exempts harbor craft and other vessels that operate only on inland waters (because they are not being sent "to sea"), and does not reach  ____________________ 11 We find some support for our judgment that criminal liability in this context is rational in the court's reference to section 10908 in Seymore v. Lake Tahoe Cruises, Inc., 888 F. _______ ________________________ Supp. 1029, 1035 (E.D. Cal. 1995). The court there recognized a wrongful termination cause of action in favor of a captain terminated for refusing to pilot a vessel he believed was unseaworthy, posing an unreasonable risk to passengers and crew.  In endorsing the pilot's claim, the court pointed to section 10908 as evidence of the strong public policy at issue. That court, at least, did not view criminal responsibility for such life-threatening conduct to be "absurd." -16- foreign vessels operating in United States waters. The scheme thus operates erratically in protecting seamen from dangerous conditions. Similar maritime safety statutes cover more territory, but do not fill in all of the gaps. Section 1115 of Title 18 punishes negligence and misconduct by any "person employed on any steamboat or vessel" that results in loss of life, and similarly imposes criminal responsibility on owners, charterers and inspectors if their fraud, misconduct or neglect leads to a death. Section 2302 of Title 46 specifies penalties for endangering life or property through negligent operation of any vessel in U.S. waters and of U.S.-owned vessels on the high seas. It would be of value, we think, for Congress to examine this area of law for the purpose of evaluating whether to make safety standards more consistent across categories of vessels and in all locations subject to United States jurisdiction.  III. Sufficiency of the Evidence ___________________________ The second question certified for en banc review is whether __ ____ the government produced sufficient evidence to support the verdict that Rivera "knowingly" sent the Emily S. to sea in an ________ "unseaworthy" condition "likely to endanger the life of an individual."12 When assessing a challenge to the sufficiency of  ____________________ 12 The term "unseaworthy" is not defined within the statute, and the question was raised at oral argument whether it should be given a more limited meaning within this criminal context than in the maritime setting, where it is "essentially a species of liability without fault," Seas Shipping Co. v. Sieracki, 328 U.S. _________________ ________ -17- the evidence, "`we review the record to determine whether the evidence and reasonable inferences therefrom, taken as a whole and in the light most favorable to the prosecution, would allow a rational jury to determine beyond a reasonable doubt that the defendant[] [was] guilty as charged.'" United States v. ______________ Sullivan, 85 F.3d 743, 747 (1st Cir. 1996) (quoting United States ________ _____________ v. Mena-Robles, 4 F.3d 1026, 1031 (1st Cir. 1993)). ___________ The original panel opinion noted that a "painstaking review of the record" had taken place, and we again have read the trial transcript in its entirety. Although we remain convinced that the jury had ample evidence upon which to base its finding that Rivera knowingly sent an unseaworthy vessel to sea, we do not have the same conviction with respect to the final element of section 10908, knowledge that the unseaworthiness was such that it would likely endanger life. We therefore begin our analysis by repeating essentially verbatim the panel's discussion of unseaworthiness, and then proceed to explain why the evidence of likely to endanger was insufficient to support the conviction. A. Knowingly sending a vessel to sea in an unseaworthy ________________________________________________________ condition _________  ____________________ 85, 94 (1946). Because we believe the mens rea requirement ____ ___ ("knowingly") and the "likely to endanger the life of an individual" element serve to sharply limit prosecutions under the provision, we see no reason to depart from the common usage of the term. We therefore understand an "unseaworthy" vessel to be one not properly outfitted or safe for a voyage at sea. See The ___ ___ Random House Dictionary of the English Language 1728 (2d ed. _______________________________________________ unabridged 1987). -18- We note at the outset that Rivera had many years of experience in the tug and barge industry, having served with a major tug and barge company in Puerto Rico prior to his employment with the Bunker Group. In addition, the record is replete with instances indicating that Rivera was informed before the fateful voyage of the precarious condition of the tow wire: -- Roy McMichael, the captain of the tugboat, testified that before the vessel set out, he raised with Rivera the condition of the wire, the need for its replacement, and the difficulty of getting the repair performed due to the holiday. -- Victor Martinez, who served as a mate on the voyage, testified that he had discussed with Rivera that "the conditions [sic] of the wire were not too favorable." -- Yaacov Eisak, who served as the tugboat engineer on the Emily S., testified that in December 1993 or early January 1994, ________ he had "about two" conversations with Pedro Rivera, in which he joked with him that "we should get some bait and we can catch some fish with so many hooks what [sic] we were having on the wire."13 -- Leonard Furmanski, who had previously served as an engineer on the Emily S. when she experienced a prior separation ________ of the wire as the boat left Guayanilla in August 1993, testified that on his return to San Juan, he told Rivera that it was time to replace the wire.  ____________________ 13 When tow wires deteriorate, short sections of wire split off and protrude in what are colloquially known as "fish hooks." -19- -- Danny Kehoe, who alternated with McMichael as the captain of the tugboat, and who was at the helm during the Guayanilla parting, testified that he told Rivera "at least six, seven times" that the towing wire needed to be replaced, and he made an entry in the boat's logbook on December 8, 1993 that the cable required replacing and that he had so informed Rivera. Kehoe testified that he had made this entry because he thought Rivera was not taking him seriously. The jury also heard expert evidence on the subject of the wire's condition. The government presented the testimony of Glenn Hargrave, a tugboat captain, who testified that it was his opinion, based on his review of the Coast Guard report, the FBI report and its accompanying photographs, and on his examination of the wire itself,14 that the wire was not fit for towing operations as of the date of the accident. FBI Special Agent Tobin characterized the "embrittled" and "deteriorated" wire as "a disaster waiting to happen." Faced with this evidence of the wire's condition and the multiple warnings about the need to replace it, as well as evidence of Rivera's extensive experience in this field, we cannot say that there was insufficient evidence presented to support the jury's conclusion that Rivera knowingly sent a vessel to sea in an unseaworthy condition. We recognize that there was  ____________________ 14 Specifically, Hargrave pointed to the large number of "fish hooks" on the wire, the severe corrosion of the wire, and the lack of flexibility of the wire, as indicating its lack of fitness for towing service on January 6, 1994. -20- competing evidence. Rivera's expert, for example, a specialist in metallurgy, testified that the cable was strong enough to tow the load on the day of the accident. Some evidence also showed that Rivera consulted with Captain McMichael and another experienced captain, George Emanuel, about whether to make and continue the voyage without first replacing the tow wire. The jury, however, was entitled to discount Rivera's expert in light of the other testimony, and could have found on this record that Rivera decided to go ahead with the voyage not because he believed the vessel was seaworthy but because he thought he could get by with one more trip using the seriously deteriorated wire. Section 10908 seems designed for precisely this sort of situation, imposing liability when an individual deliberately fails to take remedial measures for pragmatic reasons, at the expense of safety. We therefore hold that the evidence was sufficient for the jury to find that Rivera knew that the Emily S. was unseaworthy. ________ B. "Likely to Endanger" ____________________ We now revisit the question of whether there was sufficient evidence for a jury to find that Rivera knew the tug's condition was "likely to endanger the life of an individual." In so doing, we face two conflicting constraints. The first is that, as in all criminal appeals by defendants, we must give a great deal of deference to the evidence adduced in favor of the government. The second is that we must be vigilant in preventing any slackening of a standard that Congress saw fit to require as -21- the necessary predicate of the ultimate sanction of criminal liability. In a prosecution of this nature, there is an inherent hazard in the necessity of two juxtaposed jury findings, one involving knowledge of unseaworthiness, and the other knowledge of likelihood of such unseaworthiness endangering life. Unless courts remain acutely aware that the prosecutor bears separate burdens on these two issues, there is a lively danger that, once a jury has found not only that an unseaworthy condition existed, but also that a defendant knew of that condition, it could quickly be impressed by the possibility of any number of life threatening events. A slippery deck, a malfunctioning winch, or poor stowage all can lend themselves to fatal scenarios. There is very little that can go wrong at sea without some risk to human life. But the test is not "possibility" or "some risk." It is of a significantly higher order, "likely to endanger life." Not only do logic and the need to avoid watering down the prerequisite to criminal liability support this statement, but also the common understanding of the word "likely." At times, dictionary definitions give mixed signals, or are opaque or otherwise less than compelling indicia of legal meaning. But the definitions of the adverb "likely" are consistent, clear and strong: in one dictionary the meaning is simply "probably," see ___ The Random House Dictionary of the English Language 1114 (2d ed. ____________________________________________________ unabridged 1987); in another, the meanings are "in all -22- probability" and "probably," see Webster's Collegiate Dictionary ___ _______________________________ 674 (10th ed. 1993). In the context of this statute imposing criminal liability, we think that there must be sufficient evidence of a (known) defect that poses a very substantial threat to life. This is not a mathematical formula. It is not a "more probable than not" test. The prosecution should not have to prove that the chances of surviving such a defect are less than fifty percent. But the threat should be one that, objectively viewed, poses an unacceptable risk to an individual. It seems to us that instances of loss of life beyond the rare or bizarre, or a condition so inherently life threatening that it needs no record of experience, must be shown. In this case, the evidence falls significantly below anything approaching these showings. The government's evidence of the danger posed by a broken tow wire was entirely speculative. The most dramatic testimony -- Captain Hargrave's assertion that an individual on deck could be cut in half by a wire snapping back like a rubber band after it breaks -- was unsupported by any evidence that such an accident ever had occurred. Captain Robert Ross of the Coast Guard described a series of dangers attributable to a barge breaking loose from a tugboat, but his testimony failed to establish that these were other than a worst case scenario. There was no evidence that such dire consequences could be expected more than infrequently when a wire parted.  -23- In fact, witness after witness testified to experiences with cable partings, but none reported any resulting human injury.  Captain McMichael's testimony that the wire hit him after he repaired it, "knock[ing] the wind out of me a little bit," obviously falls short of meeting a "likely to endanger life" standard. Similarly, Captain Ross's description of the dangers associated with the effort to contain this particular oil spill do not demonstrate that a deteriorated tow wire is a danger to human life. Indeed, the evidence indicated that the damage that did occur was the result of aberrant circumstances. The testimony was that a proper repair the first time probably would have prevented the second parting, and that the barge remained adrift and eventually went aground after the second break because crew members were not following prescribed procedures for operating the tugboat. Rivera can not be charged with anticipating such events. The government's evidence, in sum, showed only that the parting of a tow wire could pose a serious risk to human life. _____ This is inadequate to prove that Rivera violated section 10908 by sending a vessel to sea knowing that its unseaworthy condition was likely to endanger life. ______ IV. Conclusion __________ Having concluded that the plain language of section 10908 permitted this prosecution of appellant Rivera without a prior finding of unseaworthiness, but that the evidence presented at -24- trial failed to prove an essential element of the charged crime, we reverse the conviction.  Concurrence follows. -25- TORRUELLA, Chief Judge (Concurring). Even though the TORRUELLA, Chief Judge (Concurring). ____________ majority's limited interpretation of 46 U.S.C.A. 10908 (Supp. 1997 - Title 46 Partial Revision) goes far in reducing the potential for disrupting the maritime industry that was portended by the government's and district court's interpretation of that statute, I cannot join the majority without reservation. I write separately because, with respect, I believe my colleagues are in error in declaring that prosecutions under section 10908 may be instituted without a prior finding of unseaworthiness pursuant to the procedures set forth in Chapter 109, 46 U.S.C.A. 10901-08. This interpretation improperly excises section 10908 from the statutory scheme of which it is a part and runs contrary to the legislative intent that guided the recodification of these safety regulations. Most importantly, the majority's views are counterproductive to the remedial ends pursued by Chapter 109. Section 10908 is the ultimate sanction for a violation of the procedures set forth in Chapter 109. When a vessel appears to be unfit to be sent to sea, its chief and second mates, or the majority of its crew, may file a complaint with the vessel's master before the vessel leaves the harbor. 10902. The master then applies to a district court for appointment of independent surveyors, id., whereupon they file a report with the court. ___ 10903(a). The court then rules whether the vessel is fit to proceed on the voyage. 10903(h). If deficiencies are found and corrected, the crew must proceed on the voyage or forfeit their unpaid wages. 10904. If deficiencies are found but not -26- corrected, and the ship is in a foreign port, a seaman may request to be discharged and is entitled to one month's pay in addition to wages owed. 10906. Furthermore, if deficiencies of such gravity "that [they are] likely to endanger the life of an individual" are found and not corrected, and the vessel is nevertheless sent to sea, criminal sanctions may be imposed.  10908. The majority, however, contends that section 10908 is a criminal sanction of general applicability that is unconnected to the Chapter 109 procedures. My colleagues begin and end their analysis of section 10908 by relying on the maxim of statutory interpretation that when the "plain meaning" of a statute "is clear on its face, the sole function of the courts is to enforce it according to its terms." Ante at 4. They argue that we are ____ bound by this "plain meaning" or "plain language" canon to interpret section 10908 without reference to Chapter 109's procedures. As the majority acknowledges, ante at 7, precedent from both ____ the United States Supreme Court and this Circuit establishes that the "plain language" rule requires the examination of a statute's ________ textual context. See Conroy v. Aniskoff, 507 U.S. 511, 515 ___ ______ ________ (1993) (the "cardinal rule [is] that a statute is to be read as a whole . . . , since the meaning of statutory language, plain or not, depends on context"); Skidgel v. Maine Dept. of Human _______ ______________________ Services, 994 F.2d 930 (1st Cir. 1993). Nevertheless, my ________ brethren "find no aid to construction in the provisions -27- surrounding section 10908" because in this case "the relevant 'context' is subject to different interpretations." Ante at 7. ____ Thus, "[t]aking section 10908 at face value, without limitations, avoids any uncertainty." Ante at 8.  ____ I disagree with my colleagues' appraisal of the usefulness of context in this case. Although the language of section 10908 is plain, its meaning can only be determined by reference to the text of the surrounding provisions. The majority implicitly concedes the point when it notes that "Section 10908 does not apply to fishing vessels or yachts." Ante at 16. It arrives at ____ this conclusion, not from any language found in section 10908, but rather from the text of the first section of Chapter 109, which reads: "This chapter applies to a vessel of the United _______ States except a fishing or whaling vessel or yacht." 46 U.S.C.A. 10901 (Emphasis supplied.) It is not an insignificant coincidence that sections 10901 and 10908 were both extracted from former section 658. Thus, the need to refer to section 10901 to interpret the "plain language" of section 10908 suggests that Chapter 109 is to be read and applied cohesively. The placement of section 10908 within Chapter 109 is in itself a telling sign. Chapter 109, entitled "Proceedings on Unseaworthiness," is located within Part G, "Merchant Seamen Protection and Relief," of Subtitle II of Title 46. The provisions of Part G form an interlocking whole and are exclusively concerned with regulating the relationship between seamen and the masters and owners of the vessels in which they -28- set out to sea. Thus, the placement of a generally-applicable criminal statute anywhere within Part G, let alone within Chapter 109, would have made little sense.15 Similarly, Part G codifies many of the requirements covered by the traditional warranty of seaworthiness.16 Indeed, a vessel  ____________________ 15 In contrast, the other two statutes under which the government could have proceeded in this case are located in much more appropriate contexts. Thus, 46 U.S.C.A. 2302(b), which makes it a misdemeanor to operate a vessel in a grossly negligent manner, appears in Title 46, Subpart II, Part A - General Provisions, Chapter 23 - Operation of Vessels Generally.  Similarly, 18 U.S.C.A. 1115 (Supp. 1997), which makes it a felony when the negligence of a ship's officer results in the loss of human life, appears in the United States Criminal Code. Sections 2302(b) and 1115 are also much broader in scope than section 10908. The former are both applicable to all vessels in U.S. waters, whether inland or coastal, and whether sailing under U.S. or foreign flags. Section 10908, on the other hand, excludes foreign vessels, fishing vessels, and yachts, as well as other vessels operating in harbors and inland waters, which makes sense only for a statute concerned exclusively with seamen. The majority admits to being puzzled by the limited scope of section 10908, and recommends that Congress consider making "safety standards more consistent across categories of vessels and in all locations." Ante at 16. The apparent inconsistency ____ disappears under my reading of the statute. Thus, the exclusion of foreign vessels follows from the fact that Part G's provisions apply only to vessels sailing under the United States flag. It is also understandable that fishing vessels, harbor vessels, private yachts, and vessels on inland waterways are excluded from section 10908. Such vessels are excluded from most of the provisions of Part G because they usually set out to sea only for short voyages, rendering unnecessary the detailed statutory scheme established by Part G for seamen going out to sea on intercoastal or ocean voyages. 16 The warranty of seaworthiness provides that the owner of a vessel owes an absolute duty to seamen to provide a ship's hull, gear, appliances, ways, and appurtenances which are reasonably fit for their intended purpose, Mitchell v. Trawler ________ _______ Racer, Inc., 362 U.S. 539 (1960), as well as to appoint a ___________ competent master and a crew adequate in their number and competent for their duty, Usner v. Luckenbach Overseas Corp., 400 _____ _________________________ U.S. 494 (1971). -29- is unseaworthy in precisely the same circumstances in which, for purposes of section 10902, it is unfit to proceed on its intended voyage. Consequently, the reference in section 10908 to unseaworthiness can only be interpreted in the light of the other provisions of Chapter 109 and Part G. Reading Chapter 109 as a whole reveals why, as admitted by the government, there has never been a criminal prosecution pursuant to either section 10908, or its predecessor statute, section 658. See Appendix. The goal of Chapter 109 is to ___ correct unseaworthy conditions before they pose a serious danger ______ at sea. Section 10908 serves as a deterrent, providing seamen with the leverage to force their vessel's master to comply with Chapter 109. Sections 658 and 10908 have never been used because, once the court-appointed marine surveyors have found a vessel to be unseaworthy, only the most reckless of masters would insist on setting out to sea without first repairing the vessel. Moreover, the master may not even be able to set out to sea in the face of such a finding because the seamen may choose to remain on land and receive one month's wages as severance pay.  10906. Unfortunately, my brethren's insular interpretation of section 10908 replaces the corrective focus of Chapter 109 with a punitive one, since civil sanctions cannot be imposed unless the civil complaint procedures are followed, while criminal sanctions are always available. An examination of section 10908's predecessor statute, 46 U.S.C.A. 658 (1958), establishes even more clearly that the -30- civil procedures of Chapter 109 must be initiated before section 10908 may be invoked. In 1983, Congress recodified much of the law as to seamen, and in doing so split section 658 into sections 10901, 10906, and 10908. Pub. L. No. 98-89 (1983). Section 658 established the penalties that would attach if court-appointed inspectors were to find a vessel unseaworthy in some respect. The inclusion of both civil and criminal penalties within the same section was a clear indicator that the criminal penalties were the ultimate sanction for violations discovered pursuant to the civil complaint procedures. Section 10908 should be understood in the context of section 658 because no substantive change was intended to result from the recodification, as is evident from the history of Public Law 98-89. See H.R. Rep. No. 98-338 (1983), reprinted in 1983 ___ _________ __ U.S.C.C.A.N. 924. House Report No. 98-338 states that: The ultimate aim of this legislation is three fold: to make maritime safety and seaman protection law easier for the Coast Guard to administer, to make it less cumbersome for the maritime community to use, and to make it more understandable for everyone involved. Id. at 113, 1983 U.S.C.C.A.N. at 925. During the hearings held ___ by the House, an interesting exchange took place between Congressman Studds of Massachusetts, and Admiral Lusk of the Coast Guard, the agency entrusted with enforcing the statute: Mr. Studds: Some have expressed concern that this ___________ recodification may prompt a series of long and expensive court cases initiated for the purpose of testing the judicial interpretation of terms and concepts contained in the revised law. Do you see any risk that this sort of scenario might unfold as a result of the enactment of this bill? -31- Admiral Lusk: I don't think so sir. I understood that ____________ it was to be made so clear everywhere that we weren't trying to make any substantive changes of a controversial nature. Hearings of H.R. 2247, Subcommittee on Coast Guard and Navigation, House Committee on Merchant Marine and Fisheries, 98 Cong., 1st Sess. at 455 (Add. p. 1). This is confirmed by the Report that accompanied this recodification, which stated: Although the Committee realized that many substantive changes would inevitably be made in any effort to simplify and modernize the maritime safety laws, it intended to make no changes that would prove to be detrimental to or adversely impact upon the industry governed by these laws. More specifically it sought to insure that this bill not take away any existing rights, benefits or privileges from any person, nor place any greater duties or obligations on any person. H.R. Rep. No. 338, 98th Cong., 1st Sess. at 118-119 (1983) (Add. pp. 11-12). Thus, Congress simply took the then-existing legislation and rearranged it in a more comprehensible manner. Id. The "plain meaning" rule does not govern recodification ___ statutes such as Pub. L. No. 98-89. As the Report correctly points out, in the usual kind of amendatory legislation, "a change of language is intended to change substance. In a codification statute, however, the courts uphold the contrary presumption: no change in law is intended unless clearly expressed." Id. at 118-119 (Add. at 11-12). The Supreme Court ___ has held in numerous cases that:  [T]he change of arrangement, which placed portions of what was originally a single section into separated sections cannot be regarded as altering the scope and purpose of the enactment. For it will not be inferred that Congress in revising and consolidating the laws intended to change their effect, unless such intention is clearly expressed. -32- Fourco Glass Co. v. Transmirra Products Corp., 353 U.S. 222, 227 ________________ __________________________ (1957) (citing United States v. Ryder, 110 U.S. 729, 740 (1884)); _____________ _____ see Finley v. United States, 490 U.S. 545, 553-55 (1989); Mu iz ___ ______ _____________ _____ v. Hoffman, 422 U.S. 454, 467-74 (1975); Tidewater Oil Co. v. _______ __________________ United States, 409 U.S. 151, 162 (1973); Anderson v. Pacific _____________ ________ _______ Coast S. Co., 225 U.S. 187, 198-199 (1912). Since the House _____________ Report does not even discuss the purported change in the law urged by the government, let alone clearly express an intent to enact such a change, one may safely conclude that no substantive change in this section was ever intended. Furthermore, we should be guided by our own precedent that counsels examination of statutes as a whole, and that due weight be given "to design, structure and purpose as well as to aggregate language." O'Connell v. Shalala, 79 F.3d 170, 176 (1st _________ _______ Cir. 1996) (citation omitted); United States v. Falvey, 676 F.2d _____________ ______ 871 (1st Cir. 1982). Falvey involved a prosecution for ______ possession of counterfeit foreign coins under a statutory scheme first enacted in 1877 but extensively rephrased in 1965. 18 U.S.C. 185. Until 1965, the statute's scope had been limited, to foreign coins in actual use and circulation as money within the United States. However, because the 1965 version of the law simply made it a felony to counterfeit silver coins, the government sought to apply the statute to counterfeit foreign currency that was not either in actual use or circulation in the United States. -33- This court rejected the government's contention, which was principally based on minor references to section 185 in the legislative history. Speaking for this court, Judge Campbell said: From this slender reed, the government constructs its argument that in 1965, Congress intended, in a minor provision of an act with an entirely different purpose, to make a major change in a statute dating back to 1806. We cannot accept such an argument. . . . [I]n the complete absence of any evidence that the wording was aimed at bringing about substantive changes other than the one expressly reflected in the legislative history, the most plausible explanation of the revised phraseology is that it was simply intended to eliminate the awkwardness of expression that was introduced in 1877 and carried through the 1948 version. The draftsman, we surmise, merely sought to "clean up the language" - falling into the trap, as can easily occur where statutory language is rephrased, of unintentionally suggesting a substantive change. In light of the history of this statute and the absence of any indication of an intention in 1965 to change its scope, it would be anomalous to read the amended statute as broader in coverage than its predecessors . . . Cases construing changes in statutory language tend to rely in part on evidence of congressional intent or at least attention to the change in deciding whether to give the change its literal effect . . . In the absence of these factors, courts are not bound to read a statute literally in a manner entirely at odds with its history and apparent intent. 676 F.2d at 875. My colleagues view the legislative history in this case as sending "mixed signals," ante at 9, with some of it suggesting ____ that the purpose of the legislation was simply to recodify the then-existing law, with no changes intended, and other parts indicating that "[t]he bill . . . [did] in fact make a great many substantive changes to the present law . . . [which] should be understood . . . [as] intended by the [Congress]." See H.R. Rep. ___ -34- No. 98-338 at 113, 1983 U.S.C.C.A.N. at 925. They further quote from that Report to the effect that neither logic nor case law "mandate . . . reliance on legislative history to reach a result contrary to the plain meaning of the statute." Id. at 120, 932. ___ These references miss the point. They are only applicable to substantive changes in Chapter 109. Can it be seriously ___________ argued that merely moving text from section 658 to a separate section, section 10908, with virtually identical language, constitutes a substantive change in that statute? With due ___________ respect, I think not.17 See Finley, supra; Fourco Glass Co., ___ ______ _____ _________________ supra; Mu iz, supra; Falvey, supra. In fact, those provisions of _____ _____ _____ ______ _____ Chapter 109 that are substantive changes from the prior statute are readily apparent from a comparison of both laws. See ___ Appendix. One of these is the section immediately preceding section 10908, 10907, which prohibits a master from impeding a seaman from making "a complaint authorized by this chapter," and provides a civil penalty for such conduct. Section 10907 does not appear in the old text.  Thousands of vessels take to sea every day throughout the United States, and surely many of them do so in an "unseaworthy state that is likely to endanger the life of an individual." The fact that there has been no prior invocation of either section  ____________________ 17 The case relied upon by the majority, United States v. _____________ Frezzo Bros., Inc., 602 F.2d 1123 (3d Cir. 1979), is inapposite.  __________________ The Third Circuit was there faced with the task of interpreting the Clean Water Act. That statute, 33 U.S.C. 1251, et seq., _______ which is of relatively recent vintage (1972), contains neither procedures similar to those in Chapter 109, nor is it the result of a recodification scheme. -35- 658 or section 10908 thus casts further doubt on the view that Congress by this recodification intended to enact a major change in the maritime law, without making any specific statement to that effect. Although I would be the last to condone sending an unseaworthy vessel to sea, and sincerely hope that deliberate environmental damage does not go unpunished, the imposition of criminal sanctions under the present circumstances constitutes a radical departure from what has been the custom and practice in the maritime world to the present time.  Notwithstanding that the majority's holding on the sufficiency of the evidence ameliorates the impact of this new interpretation of the statute, it nonetheless poses a substantial threat of converting untold numbers of unsuspecting persons into prospective felons. Although Congress could very well enact a statute with the reach envisioned by the majority, I am hard pressed to accept such a significant break with the past, particularly where criminal sanctions are at stake, absent a clear indication that such construction is the intended result of what appears to be a mere reshuffling of a longstanding maritime safety statute. See Falvey, supra.  ___ ______ _____ Finally, the fact that the interpretations of section 10908 proposed by Rivera and the government are "both . . . consistent with what [the majority] see[s] as the overall purpose of the legislation," ante at 7, should at the very least suffice to ____ trigger the operation of the rule of lenity, which "commands that genuine ambiguities affecting a criminal statute's scope be -36- resolved in the defendant's favor," ante at 11 n.8 (quoting ____ United States v. Bowen, Nos. 96-2289, 90, slip. op. at 15 (1st _____________ _____ Cir. Sept. 5, 1997)). The majority refuses to apply the rule because "[t]he plain language of section 10908 is not ambiguous." ______________ Ante at 11 n.8 (emphasis added). However, in applying the rule ____ of lenity the inquiry is not whether the language of the statute is plain, but rather whether its meaning is clear. See United _______ ___ ______ States v. O'Neill, 11 F.3d 292, 301 n.10 (1st Cir. 1993) (the ______ _______ rule is applicable when "at the end of a thorough inquiry, the meaning of a criminal statute remains obscure") (emphasis added). _______ The meaning and scope of section 10908 can hardly be described as unambiguous when, as the majority admits and this concurrence has shown, it remains subject to two reasonable but competing interpretations. Thus, if Congress accepts the majority's invitation to look into this matter, ante at 16, I also suggest ____ that it define unambiguously the nature of the relationship between Chapter 109's civil and criminal provisions. -37- Appendix: A Comparison of Provisions Appendix Predecessor Statute: Current Chapter 109: Predecessor Statute: Current Chapter 109: 46 U.S.C. 653-658 "Proceedings on 46 U.S.C. 653-658 "Proceedings on Unseaworthiness," Unseaworthiness," 46 U.S.C. 10901-10908 46 U.S.C. 10901-10908 653: Complaint that 10901: Application. ____________________ ___________ V e s s e l i s ____________________ Unseaworthy. "This chapter applies to a ___________ vessel of the United "If the first and second States except a fishing or officers under the master whaling vessel or yacht."  or a majority of the crew of any vessel bound on any 10902: Complaints of ___________________ voyage shall, before the unfitness. _________ vessel shall have left the harbor, discover that the "(a)(1) If the chief and (a)(1) vessel is too leaky or is second mates or a majority otherwise unfit . . . to of the crew of a vessel proceed on the intended ready to begin voyage voyage, and shall require discover, before the such unfitness to be vessel leaves harbor, that inquired into, the master the vessel is unfit . . . shall, upon the request of to proceed on the intended the first and second voyage and require the officers under the master unfitness to be inquired or such majority of the into, the master crew, forthwith apply to immediately shall apply to the judge of the district the district court of the court of that judicial United States at the place district . . . for the at which the vessel is appointment of surveyors, located . . . for the as provided in section 654 appointment of surveyors. of this title, taking with At least 2 complaining him two or more of the seamen shall accompany the crew who shall have made master to the judge or such request . . . . [A]ny justice of the peace. master refusing to comply (2) A master failing to (2) with these provisions comply with this shall be liable to a subsection is liable to penalty of $500. This the United States section shall not apply to Government for a civil fishing or whaling vessels penalty of $500." or yachts." -38- 654: Proceedings on 10903: Proceedings on _____________________ ______________ examination of examination of _____________________ ______________ vessel. vessel. ______ ______ "The judge, or justice, in "(a)On application under "(a) a domestic port, shall, section 10902(a) of this upon such application, title, the judge or issue his precept, justice of the peace shall directed to three persons appoint 3 experienced and in the neighborhood, the skilled marine surveyors most experienced and to examine the vessel for skillful in maritime the defects or affairs that can be insufficiencies complained procured . . . . It shall of . . . . The surveyors be the duty of such shall make a report in surveyors to repair on writing . . . stating board such vessel and to whether the vessel is fit examine the same in to proceed to sea, and, if respect to the defects and not, in what respect it is insufficiencies complained unfit, making appropriate of, and make reports to recommendations . . . . the judge . . . in writing (b) On receiving the (b) . . . whether in any or in report, the judge or what respect the vessel is justice shall endorse on unfit to proceed on the the report the judgment of intended voyage . . . . the judge or justice on [U]pon such report the whether the vessel is fit judge or justice shall to proceed on the voyage . adjudge and shall indorse . . . on his report his judgment (c) The master shall pay (c)  whether the vessel is fit all costs of the survey . to proceed on the intended . . . voyage, and, if not, (d) A master of a vessel (d) whether such repairs can violating this section is be made or deficiencies liable to the United supplied . . . . The States Government for a master or commander shall, civil penalty of $100 . . in the first instance, pay . ." all costs of such a review . . . ." -39- 655: Refusal to proceed 10904: Refusal to ____________________ ___________________ when vessel found proceed. ____________________ _______ seaworthy. _________ "After a judgment under "If, after judgment that section 10903 of this such vessel is fit to title that a vessel is fit proceed . . . [or after to proceed . . . or after performing the directed the order of a judgment to alterations] the seamen, make up deficiencies is or either of them, shall complied with, if a seaman refuse to proceed on the does not proceed on the voyage, he shall forfeit voyage, the unpaid wages any wages that may be due of the seaman are him." forfeited." -40- 656: Appointment of 10905: Complaints in ____________________ _____________ inspectors by consul foreign ports. ____________________ _____________ in foreign port. _______________ "(a) When a complaint (a) "Upon a complaint in under section 10902(a) of writing, signed by the this title is made in a first and second officers foreign port, the or a majority of the crew procedures of this chapter of any vessel, while in a shall be followed, with a foreign port, that such consular officer vessel is in an unsuitable performing the duties of condition to go to sea . . the judge or justice of . the consul shall cause the peace. to be appointed three (b) On review of the (b) persons of like marine surveyors' report, qualifications with those the consular officer may described in section 654 approve and must certify of this title, who shall any part of the report proceed to examine into with which the officer the cause of the complaint agrees. If the consular and who shall proceed to officer dissents from any be governed in all their part of the report, the proceedings as provided by officer shall certify said section." reasons for dissenting from that part." 657: R e p o r t o f ____________________ inspectors. __________ "The inspectors appointed by any consul, in pursuance of section 656 of this title, shall have full power to examine the vessel . . . .[I]f, upon a view of the whole proceedings, the consul is satisfied therewith, he may approve the whole or any part of the report, and shall certify such approval; or if he dissents, he shall certify his reasons for dissenting."  -41- 658: Discharge of crew on 10906: Discharge of crew ____________________ ___________________ a c c o u n t o f for unsuitability. ____________________ _________________ unseaworthiness; ________________ penalty for sending "When a survey is made at ____________________ unseaworthy vessel a foreign port, the ____________________ to sea. surveyors shall state in ______ the report whether, in "The inspectors [shall their opinion, the vessel state whether] the vessel had been sent to sea was sent to sea unsuitably unsuitably provided in any provided in any important important particular, by or essential particular, neglect or design or by neglect or design, or through mistake or through mistake or accident. If by neglect accident; and in case it or design, and the was by mistake or design, consular official approves and the consular officer the finding, the officer approves of such finding, shall discharge a seaman he shall discharge such of requesting discharge and the crew as request it, shall require the master and shall require the to pay one month's wages payment by the master of to that seaman in addition one month's wages of each to wages then due, or seaman over and above the sufficient money for the wages then due . . . . But return of the seaman to if in the opinion of the the nearest and most inspectors the defects or convenient port of the deficiencies found to United States, whichever exist have been the result is the greater amount." of mistake or accident, and could not, in the 10907: Permission to make ___________________ exercise of ordinary care, complaint. _________ have been known and provided against before "(a) A master may not (a) the sailing of the vessel, refuse to permit, deny the and the master shall in a opportunity to, or hinder reasonable time to remove a seaman who wishes to or remedy the causes of make a complaint complaint, then the crew authorized by this shall remain and discharge chapter. their duty. If any person (b) A master violating (b) _____________ knowingly sends or this section is liable to __________________________ attempts to send or is the United States for __________________________ party to the sending or civil penalty of $500." __________________________ attempting to send an __________________________ American ship to sea, in 10908: Penalty for __________________________ ___________________ the foreign or coastwide s e n d i n g __________________________ _____________ trade, in such an unseaworthy vessel __________________________ ___________________ unseaworthy state that the to sea. __________________________ ______ life of any person is __________________________ likely to be thereby "A person that knowingly ____________________ -42-