USCA1 Opinion

 

 United States Court of Appeals
 For the First Circuit
 
 ____________________
 
 
 
 No. 97-2244
 
 MARK DUCKWORTH,
 
 Plaintiff, Appellant,
 
 v.
 
 PRATT & WHITNEY, INC.,
 
 Defendant, Appellee.
 ____________________
 
 APPEAL FROM THE UNITED STATES DISTRICT COURT
 
 FOR THE DISTRICT OF MAINE
 
 [Hon. Gene Carter, U.S. District Judge]
 ____________________
 
 Before
 
 Lynch, Circuit Judge,
 
 Campbell and Bownes, Senior Circuit Judges.
 
 ____________________
 
 Helen Norton, with whom Donna R. Lenhoff, Janet S.
 Chung, National Partnership For Women & Families, Peter L.
 Thompson and Law Offices of Ronald Coles, were on brief, for
 appellant.
 Richard G. Moon, with whom Jonathan Shapiro, Melinda
 J. Caterine, and Moon, Moss, McGill, Hayes & Shapiro, P.A. were
 on brief, for appellee.
 Leif G. Jorgenson, Attorney, United States Department
 of Labor, with whom Marvin Krislov, Deputy Solicitor of Labor
 for National Operations, Steven J. Mandel, Associate Solicitor,
 and William J. Stone, Counsel for Appellate Litigation, were on
 brief, for United States Secretary of Labor, amicus curiae.
 Catherine K. Ruckelshaus, Sara E. Rios, Patricia A.
 Shiu, Catherine R. Albiston, and Robin Runge on brief for
 National Employment Law Project, Employment Law Center (a
 project of the Legal Aid Society of San Francisco), National
 Council of Jewish Women, United Mine Workers of America, Equal
 Rights Advocates, Center for Women Policy Studies, Union of
 Needletrades, Industrial & Textile Employees, Women Employed,
 American Federation of State, County and Municipal Employees,
 International Federation of Professional and Technical
 Engineers, American Federation of Teachers, American
 Association of University Women, RESOLVE, Service Employees
 International Union, American Association of Retired Persons,
 National Women's Law Center, American Civil Liberties Union of
 Massachusetts, and 9to5, National Association of Working Women,
 amici curiae.
 Ann Elizabeth Reesman, Robert E. Williams, and
 McGuiness & Williams on brief for Equal Employment Advisory
 Council, amicus curiae.
 Loretta M. Smith and New England Legal Foundation on
 brief for Associated Industries of Massachusetts, Business and
 Industry Association of New Hampshire, Connecticut Business and
 Industry Association and Maine Chamber and Business Alliance,
 amici curiae.
 
 ____________________
 
 July 14, 1998
 ____________________
 LYNCH, Circuit Judge. The facts alleged in this case
 are simple: that Pratt & Whitney refused to rehire Mark
 Duckworth because he had a "poor" attendance rating resulting
 from his fifty-two day absence from work in 1994 caused by a
 serious health condition, an absence protected by the federal
 Family and Medical Leave Act (FMLA), 29 U.S.C. 2601-54, and
 its state counterpart, Maine's Family Medical Leave
 Requirements, Me. Rev. Stat. Ann. tit. 26, 843-48 (West
 1997). Duckworth says the refusal to rehire violated these
 laws because the employer's decision was based on Duckworth's
 use of statutorily protected leave. Duckworth's complaint was
 dismissed for failure to state a claim pursuant to Fed. R. Civ.
 P. 12(b)(6). We reverse and reinstate the lawsuit.
 I. We state the facts as they are alleged in Duckworth's
 complaint, which we take to be true for the purposes of a
 motion to dismiss. See Salois v. Dime Sav. Bank, 128 F.3d 20,
 22 (1st Cir. 1997).
 Duckworth was employed by a Pratt & Whitney
 manufacturing facility in North Berwick, Maine from 1980 until
 December 1994, when he was laid off. Attendant to the layoff,
 one of Duckworth's former supervisors completed an "Employment
 Termination Record" sometime around January 6, 1995. The
 Termination Record had a line entitled "Rehire Status." On
 that line, the supervisor wrote that Duckworth's attendance was
 "poor." Nearly two years later, on October 17, 1996, Duckworth
 unsuccessfully applied to Pratt & Whitney for a job. 
 Duckworth's complaint states that the "poor" attendance rating
 was the basis for Pratt & Whitney's refusal to rehire him. 
 Duckworth alleges that the "poor" rating resulted from his
 taking fifty-two days of medical leave in 1994, leave that was
 protected by the FMLA, and that Pratt & Whitney's refusal to
 rehire him thus interfered with his FMLA-protected right to
 take medical leave.
 We take it as given that the 1994 leave was covered
 by the FMLA. Apparently, an accident left Duckworth with a
 punctured lung and broken ribs, which caused him to be absent
 from work from June 20, 1994 to August 11, 1994. The effects
 of those injuries and of the medications he took caused
 Duckworth to be absent a second time, from August 31, 1994 to
 September 22, 1994. He was under his physician's treatment
 throughout. It is also undisputed that Duckworth suffered from
 a "serious health condition" as defined by 29 U.S.C. 2611(11)
 at the time of the absences. Further, Pratt & Whitney concedes
 that Duckworth was an "eligible employee" within the meaning of
 2611(2) at the time he took leave and that Pratt & Whitney
 was a covered "employer" within the meaning of 2611(4).
 II. Duckworth brought suit in the United States District
 Court for the District of Maine in August 1997. He alleged
 that the employer had willfully discriminated against him for
 having exercised his FMLA-protected right to take medical
 leave, in violation of 29 U.S.C. 2615 and its Maine analogue. 
 That section of the FMLA, entitled "Prohibited Acts," provides:
 (a) Interference with rights
 (1) Exercise of rights
 It shall be unlawful for any
 employer to interfere with,
 restrain, or deny the exercise
 of or the attempt to exercise,
 any right provided under this
 subchapter.
 
 29 U.S.C. 2615(a)(1).
 Duckworth also relied on a regulation promulgated by
 the United States Department of Labor (DOL) that makes it clear
 that employers may not take a prospective employee's past use
 of FMLA-protected leave into account in hiring decisions. That
 regulation provides:
 An employer is prohibited from
 discriminating against employees or
 prospective employees who have used FMLA
 leave. . . . [E]mployers cannot use the
 taking of FMLA leave as a negative factor
 in employment actions, such as hiring,
 promotions or disciplinary actions . . . .
 
 29 C.F.R. 825.220(c). Because he is entitled to protection
 under this regulation, Duckworth says he may bring an action
 under 29 U.S.C. 2617(a) to enforce those rights. In this,
 the DOL agrees with him.
 The district court dismissed the action for failure
 to state a claim on which relief may be granted, basing its
 reasoning on the provision of the Act creating a private right
 of action:
 An action . . . may be maintained against
 any employer . . . by any one or more
 employees for and in behalf of -- 
 (A) the employees; or
 (B) the employees and other employees
 similarly situated.
 
 29 U.S.C. 2617(a)(2). The district court reasoned that
 because Duckworth had volunteered for a layoff, his claim arose
 from his status as a prospective employee, not as a current,
 eligible employee. The district court noted that the
 enforcement provisions of the Act created a private remedy only
 for "employees." The district court reasoned that the term
 "employees" is not ambiguous, but inherently applies only to
 current employees (thus rejecting DOL's interpretation of the
 term to include prospective employees), and that Duckworth had
 no cause of action because he was not a current employee. The
 court noted that if Congress had intended to include job
 applicants within the meaning of the FMLA, it could have
 expressly included job applicants within the statute's
 coverage, as it did in the Americans with Disabilities Act
 (ADA), 42 U.S.C. 12101-12213. The federal claim having been
 dismissed, the court also dismissed, without prejudice, the
 pendent state claim.
 III.
 We review the district court's dismissal order de
 novo. See Doyle v. Hasbro, Inc., 103 F.3d 186, 190 (1st Cir.
 1996).
 Although this case is a significant one for
 individuals and employers affected by the FMLA, it turns on a
 relatively straightforward and limited question of statutory
 construction, and then on deference to administrative
 lawmaking. For the purposes of its motion to dismiss, Pratt &
 Whitney essentially concedes that the actions described by
 Duckworth's complaint may have violated 29 U.S.C. 2615, which
 makes it "unlawful for any employer to interfere with,
 restrain, or deny the exercise of or the attempt to exercise,
 any right" protected by the FMLA. But, Pratt & Whitney argues,
 he has no judicial forum available, only an administrative one.
 Pratt & Whitney correctly notes that Congress
 provided several mechanisms for enforcing the FMLA. First,
 Congress provided "employees" an express private right of
 action to enforce the Act. See 29 U.S.C. 2617(a)(2). The
 Secretary of Labor has authority to bring civil actions against
 violators. See id. 2617(b). Aggrieved individuals may file
 an administrative complaint with the DOL. See id. 
 2617(b)(1). Hence, Pratt & Whitney argues, if Duckworth has
 a claim at all, he must rely on administrative enforcement
 because he was not an "employee" at the time of the violation, 
 but only a prospective employee. 
 Thus, the question is whether Duckworth may avail
 himself of the Act's private right of action, a right of action
 that is limited to "employees." The district court determined
 that the Act provides a private remedy only for those employees
 who suffer adverse action at the time they are employed by the
 employer in question. This interpretation would exclude
 prospective employees who complain that they were not hired
 because they had used FMLA-protected leave in the past, as well
 as former employees whose previous employer retaliates against
 them for using FMLA-protected leave by, for example, giving a
 negative reference to a future employer. 
 We do not write on a clean slate. The Act delegates
 to the Secretary of Labor broad authority to "prescribe such
 regulations as are necessary to carry out" the Act. 29 U.S.C.
 2654. The regulations on which Duckworth relies were
 promulgated pursuant to the requirements of notice-and-comment
 rulemaking under the Administrative Procedure Act, 5 U.S.C. 
 553. Under those regulations, Duckworth is an "employee" who
 can sue for violations of 29 U.S.C. 2615. Pratt & Whitney
 does not challenge the procedural validity of the rulemaking
 process.
 The Secretary of Labor argues that the term
 "employees" is ambiguous, not inherently limited to current
 employees, and that its regulations extending the Act's
 protection to prospective and former employees are entitled to
 deference. See Chevron v. Natural Resources Defense Council,
 467 U.S. 837, 843-44 (1984); see also 29 C.F.R. 825.220(c). 
 The regulations were an exercise of the Secretary's delegated
 authority and were adopted with the participation of the
 public, and thus deference to the Secretary's interpretation is
 properly invoked. 
 "Under the formulation now familiar, when we examine
 the Secretary's rule interpreting a statute, we ask first
 whether 'the intent of Congress is clear' as to 'the precise
 question at issue.'" Regions Hosp. v. Shalala, 118 S. Ct. 909,
 915 (1998) (quoting Chevron, 467 U.S. at 842). We use
 traditional tools of statutory construction to determine if
 Congress' intent is clear as to that precise issue. See
 id.; Goncalves v. Reno, No. 97-1953, 1998 WL 236799, at *18
 (1st Cir. May 15, 1998). If, however, "the statute is silent
 or ambiguous with respect to the specific issue, the question
 for the court is whether the agency's answer is based on a
 permissible construction of the statute." Chevron, 467 U.S. at
 843. "If the agency's reading fills a gap or defines a term in
 a reasonable way in light of the Legislature's design, we give
 that reading controlling weight, even if it is not the answer
 'the court would have reached if the question initially had
 arisen in a judicial proceeding.'" Regions Hosp., 118 S. Ct.
 at 915 (quoting Chevron, 467 U.S. at 843 n.11).
 Under the first step of the Chevron analysis, we
 examine the statutory language at issue using our traditional
 tools of statutory construction. That requires us to determine
 whether "the language at issue has a plain and unambiguous
 meaning with regard to the particular dispute in the case." 
 Robinson v. Shell Oil Co., 117 S. Ct. 843, 846 (1997). "The
 plainness or ambiguity of statutory language is determined by
 reference to the language itself, the specific context in which
 the language is used, and the broader context of the statute as
 a whole." Id. We employ that process to determine whether
 Congress has spoken, for "[i]f the intent of Congress is clear,
 that is the end of the matter; for the court, as well as the
 agency, must give effect to the unambiguously expressed intent
 of Congress." Chevron, 467 U.S. at 842-43.
 The district court determined that the term
 "employees" has an inherent "plain meaning." The plain meaning
 seen by the district court was that "employees" means "current
 employees." Such a definition excludes prospective employees,
 and, necessarily, former employees. If, by choosing the word
 "employees," Congress had manifested an unambiguous intent to
 exclude Duckworth's claim from the Act's coverage, we would
 agree with the district court and would be bound to reject the
 Secretary's interpretation. No deference is due the
 administrative agency's interpretation if it conflicts with
 unambiguous language. See Strickland v. Commissioner, Me.
 Dep't of Human Servs., 48 F.3d 12, 16 (1st Cir. 1995). Whether
 the statute is ambiguous is a question of law for the court to
 decide, and it is one which we must review de novo. See id.at 16-17. We think the district court's determination that the
 term "employees" is unambiguous, always meaning "current
 employees," is in error for several reasons.
 First, courts have consistently regarded the term
 "employees," as used in other federal employment statutes, as
 not inherently limited to current employees. Cases involving
 such statutes are instructive, although not determinative. SeeSerapion v. Martinez, 119 F.3d 982, 985 (1st Cir. 1997) ("We
 regard Title VII, ADEA, ERISA, and FLSA as standing in pari
 passu and endorse the practice of treating judicial precedents
 interpreting one such statute as instructive in decisions
 involving another.")
 Second, in Robinson, supra, a case raising a very
 similar issue under another employment statute, the Supreme
 Court made clear that the term "employees," as used in the
 anti-retaliation provision of Title VII, 42 U.S.C. 2000e-
 3(a), includes former employees. The rationale of Robinsonapplies here. In Robinson, the plaintiff was fired and he
 filed a charge with the Equal Employment Opportunity Commission
 (EEOC) saying that his firing was motivated by race
 discrimination. See 117 S. Ct. at 845. The plaintiff then
 applied for a job at another company, and his former employer
 gave a negative reference. See id. The plaintiff alleged this
 poor reference was in retaliation for his EEOC charge, and
 filed suit. The district court dismissed the lawsuit on the
 ground that the plaintiff was not an "employee" at the time the
 adverse action was taken, and the court of appeals affirmed. 
 A unanimous Supreme Court reversed.
 The Supreme Court reasoned that the word "employee"
 does not have some "intrinsically plain meaning," id. at 847
 n.4, that is limited "to those having an existing employment
 relationship with the employer in question," even though that
 argument may seem plausible "at first blush." Id. at 846. 
 Canvassing various federal statutes, Robinson noted that
 Congress has not used the term "employee" with precision, but
 rather has used the term, at various times, to refer to both
 former and prospective employees. Id. at 846-47; see also NLRBv. Town & Country Elec., Inc., 516 U.S. 85 (1995) (upholding
 the NLRB's determination that the term "employees" in the
 National Labor Relations Act (NLRA) applies to prospective
 employees who were paid union organizers); Passer v. American
 Chem. Soc'y, 935 F.2d 322, 330-31 (D.C. Cir. 1991) (term
 "employees" in Age Discrimination in Employment Act (ADEA)
 includes former employees). Thus, absent an express "temporal
 qualifier," such as "current," Robinson, 117 S. Ct. at 846,
 Congress' use of the word "employees" does not inherently
 exclude former and prospective employees.
 Third, an example of ambiguity, thus counselling
 deference to the agency, comes from the definitional section
 enacted by Congress. The FMLA provides that the definition of
 "employee" in the FLSA, 29 U.S.C. 203(e), is also applicable
 to the FMLA. See 29 U.S.C. 2611(3). That definition, "any
 individual employed by an employer," 29 U.S.C. 203(e), (which
 is subject to certain exceptions not relevant here) does not
 make the term any less ambiguous. In Robinson, the Supreme
 Court found that the identical definition contained in Title
 VII did not add anything to "employee" which made it less
 ambiguous. See 117 S. Ct. at 847; see also Nationwide Mut.
 Ins. Co. v. Darden, 503 U.S. 318, 323 (1992) ("ERISA's nominal
 definition of 'employee' as 'any individual employed by an
 employer' is completely circular and explains nothing."
 (Citation omitted.)).
 Pratt & Whitney argues that, although the term
 "employed" could mean both "is employed" or "was employed," seeRobinson, 117 S. Ct. at 847 (noting this ambiguity), it cannot
 mean "will be employed," and so the use of the FLSA definition
 at least excludes prospective employees. However, the FMLA's
 use of the FLSA definition of "employee" was plainly meant to
 incorporate the FLSA's list of exceptions, see 29 U.S.C. 
 203(e), not to exclude prospective employees from the FMLA's
 coverage. Indeed, the FLSA definition of "employee" has been
 held by one circuit court to apply to prospective employees,
 see Dunlop v. Carriage Carpet Co., 548 F.2d 139 (6th Cir.
 1977), and has been described by the Supreme Court as
 "exceedingly broad," Tony & Susan Alamo Found. v. Secretary of
 Labor, 471 U.S. 290, 295 (1985); see also United States v.
 Rosenwasser, 323 U.S. 360, 362 (1945) ("A broader or more
 comprehensive coverage of employees within the stated
 categories [in the FLSA] would be difficult to frame.") 
 "Congress' repetition of a well-established term carries the
 implication that Congress intended the term to be construed in
 accordance with pre-existing regulatory [and judicial]
 interpretations." Bragdon v. Abbott, No. 97-156, 1998 WL
 332958, at *5 (U.S. June 25, 1998); see also Goncalves, 1998 WL
 236799, at *25 (noting that Congress is presumptively aware of
 existing judicial or administrative interpretations). 
 Moreover, the legislative history reveals that Congress, at the
 time it enacted the FMLA, was aware of the breadth of the FLSA
 definition and purposely chose to adopt that definition. SeeS. Rep. No. 103-3, at 22 (1993), reprinted in 1993 U.S.C.C.A.N.
 3, 25 (noting that "[t]his definition is broadly inclusive");
 Bragdon, 1998 WL 332958, at *13 (noting that the legislative
 history revealed Congress' awareness of the breadth of the
 definition of "handicap" in the Rehabilitation Act when it
 chose to include that definition in drafting the ADA).
 Fourth, our reading of other statutory provisions
 does not eliminate the ambiguity. In providing various
 readings of statutory terms below, we are most emphatically not
 ruling on whether the particular readings are correct, only
 that the variety of possible readings demonstrates ambiguity. 
 And that ambiguity sets the stage for deference to reasonable
 administrative interpretation. In this context, we address one
 of Pratt & Whitney's strongest arguments, that Congress has, in
 some statutes, distinguished "job applicants" from "employees,"
 expressly providing that the statute's protection extends to
 both. See, e.g., 42 U.S.C. 12112(b)(1) (providing that, in
 the ADA, "the term 'discriminate' includes limiting,
 segregating or classifying a job applicant or employee" in a
 way that adversely affects a disabled individual's
 opportunities). Congress could have done so here, under the
 FMLA, but did not. That Congress could have singled out "job
 applicants" for express coverage does not mean it clearly
 intended to exclude job applicants from the FMLA. Indeed, much
 prior judicial interpretation of analogous statutes could lead
 Congress to conclude that such a level of precision is not
 required, or at least that it could, by choosing to use an
 open-ended term like "employee," entrust that policy choice to
 the agency. For example, the NLRA does not explicitly include
 "job applicants" within its definition of "employees," see 29
 U.S.C. 152(3), but the Supreme Court has long held that term
 to include prospective employees, see Phelps Dodge Corp. v.
 NLRB, 313 U.S. 177, 185-86 (1941), and has recently upheld a
 Board determination that the term applies to prospective
 employees who were paid union organizers, see Town & Country,
 516 U.S. at 87. In the FMLA, Congress did not provide separate
 protection for "job applicants" and for "employees." The
 Supreme Court has repeatedly observed that the word "employee"
 "is not treated by Congress as a word of art having a definite
 meaning" that would, for example, exclude prospective or former
 employees. NLRB v. Hearst Publications, Inc., 322 U.S. 111,
 124 (1944) (internal quotation marks and citation omitted).
 Pratt & Whitney next argues that, given the "specific
 context in which [the term 'employees'] is used," Robinson, 117
 S. Ct. at 846, the term can only mean current employees. This,
 Pratt & Whitney argues, is the express "temporal qualifier"
 that makes the term "employees" in 29 U.S.C. 2617
 unambiguous, and thus makes the outcome of Robinson not
 controlling. Paragraph (1) of the section at issue makes
 "[a]ny employer who violates section 2615 of this title . . .
 liable to any eligible employee affected for damages . . . and
 for such equitable relief as may be appropriate, including
 employment, reinstatement, and promotion." 29 U.S.C. 
 2617(a)(1) (emphasis supplied). Paragraph (2) then provides
 that "[a]n action to recover the damages or equitable relief
 prescribed in paragraph (1) may be maintained against any
 employer . . . by any one or more employees . . . ." Id. 
 2617(a)(2). An "eligible" employee is one who has worked for
 at least twelve months and for at least 1,250 hours of service. 
 See id. 2611(2). Pratt & Whitney argues "employees" cannot
 mean prospective employees because such employees are not yet
 eligible, and it cannot mean former employees because such
 employees are no longer eligible.
 Pratt & Whitney's argument necessarily assumes that
 the employee must be "eligible" at the time of the adverse
 action, rather than at the time the employee wishes to take
 leave. This reading is far from mandated by the statute's
 language, and strikes us as unlikely. The statute makes any
 employer "liable to any eligible employee affected" by a
 violation of the Act. This language, read naturally, means
 that an employee must be "eligible" at some time and that he or
 she must have been "affected" by the employer's action. The
 statute does not make clear whether an employee is "affected"
 by an adverse action at the time the action was taken or at the
 time he or she wanted to take leave, or indeed whether there is
 any required temporal connection between "eligible" and
 "affected." In Duckworth's case, although Pratt & Whitney
 (arguably) took its adverse action after Duckworth left
 employment, its action was, Duckworth argues, one designed to
 punish him for his past protected leave-taking (as a former
 eligible employee) or to prevent him from future protected
 leave-taking (as a prospective eligible employee). Under this
 interpretation, Pratt & Whitney's actions "affected" Duckworth
 and Duckworth was eligible when he took his leave.
 Other language in the subsection, providing for
 equitable remedies, suggests a different reading: that the
 requirement of eligibility applies when the employee wishes to
 take leave, not when the employer takes an adverse action. The
 remedies include "employment, reinstatement, and promotion." 
 These remedies are inconsistent with a definition of "employee"
 which applies only to current employees. Instead, each of the
 three remedies most naturally refers to employees who are in
 different temporal circumstances -- one "promot[es]" a current
 employee, one "reinstate[s]" a former employee, and one
 "employ[s]" a prospective employee. Cf. Robinson, 117 S. Ct.
 at 847 (making a similar observation). Pratt & Whitney argues
 that reinstatement could be limited to those former employees
 who suffered the adverse action at a time they were still
 employed, and that the remedy of "employment" could also be
 limited to such former employees. But that interpretation is
 certainly not the only plausible reading, and suffers from its
 own problems. It renders the remedy of "employment" in 29
 U.S.C. 2617(a)(1) essentially the same as the statutory
 remedy of "reinstatement" in that subsection, making the terms
 redundant. It is a "'cardinal principle of statutory
 construction that it is our duty to give effect, if possible,
 to every clause and word of a statute.'" Goncalves, 1998 WL
 236799, at *20 (quoting Bennett v. Spear, 117 S. Ct. 1154, 1166
 (1997)).
 We regard the statute as, at best, ambiguous
 concerning the temporal scope of the term "employees." The
 statute does not plainly limit the term to current employees. 
 We also find nothing in the legislative history evincing a
 "clearly expressed legislative intention contrary to the
 statutory language" that would resolve the ambiguity in Pratt
 & Whitney's favor. United States v. Rivera, 131 F.3d 222, 226
 (1st Cir. 1997) (en banc) (internal quotation marks and
 alterations omitted). Finally, nothing in the "broader context
 of the statute as a whole," Robinson, 117 S. Ct. at 846,
 provides support for Pratt & Whitney's position that there is
 an unambiguously expressed intent of Congress to read the
 statute as it poses. 
 Consequently, the second stage of the Chevronanalysis comes into play: whether the Secretary's reading of
 the statute is a reasonable one. See Massachusetts v. FDIC,
 102 F.3d 615, 622 (1st Cir. 1996). The statute, read as a
 whole and in light of its purposes, leads to the conclusion
 that the Secretary's broad definition of "employees" is
 reasonable.
 First, the provision at issue, the enforcement
 section, makes any employer "who violates section 2615 of this
 title" liable to the affected employee in a civil action. 29
 U.S.C. 2617(a)(1). Section 2615 provides that it is unlawful
 "to interfere with, restrain, or deny the exercise of or the
 attempt to exercise, any right" provided by the FMLA, as well
 as to deny leave. Id. 2615(a)(1). That section also makes
 it "unlawful for any employer to discharge or in any other
 manner discriminate against any individual for opposing any
 practice made unlawful" by the FMLA. Id. 2615(a)(2). 
 Finally, that section provides specific protection to "any
 individual" who gives any information in a proceeding "under or
 related to" the FMLA. Id. at 2615(b). None of these
 provisions are limited to current, eligible employees; instead,
 they use terms like "any individual." Of course, the statute's
 private right of action is limited to "employees," but that
 term is not inherently limited to current employees, and the
 scope of the "prohibited acts" section strongly suggests that
 it should not be so limited. 
 Indeed, the fact that 2615 uses the term "any
 individual" is strong evidence that Congress drew a distinction
 when drafting the FMLA between the substantive right of leave
 and the right under the anti-retaliation provision to be free
 from employer interference with FMLA-protected leave rights.
 Such interference, Congress implicitly recognized, could be
 directed at individuals (such as prospective and former
 employees, or witnesses in FMLA proceedings) who might not be
 presently eligible for FMLA leave. Although only "eligible
 employees" have substantive rights, it is unlawful for an
 employer to interfere with the rights of "any individual" that
 are protected under the Act.
 Other sections of the FMLA are likewise consistent
 with the Secretary's interpretation. For example, covered
 employers are required under the FMLA to post a notice setting
 forth the FMLA's statutorily mandated leave policy "in
 conspicuous places on the premises of the employer where
 notices to employees and applicants for employment are
 customarily posted." Id. 2619. It would be strange, as the
 Secretary notes, to require job applicants to be informed of
 rights if the employer is free to punish prospective and new
 employees for asserting such rights.
 Similarly, the prelude "findings and purposes,"
 contained in the FMLA at 2601, say that "employment standards
 that apply to one gender only have serious potential for
 encouraging employers to discriminate against employees and
 applicants for employment who are of that gender." This was
 Congress' rationale for mandating gender-neutral leave for
 family and medical purposes rather than mandating maternity
 leave for women who had recently given birth. It would be
 inconsistent with Congress' concern about possible
 discrimination against prospective employees who intend to take
 leave to limit the Act's private remedies to current
 employees. 
 The Secretary of Labor notes a number of effects of
 the position taken by Pratt & Whitney which would undermine the
 stated purposes of the statute. Under Pratt & Whitney's
 interpretation, an expectant mother who had worked for her
 employer for eleven months could be fired from her job if she
 notified her employer of her need for leave several months
 later, at a time when she would be an "eligible" employee under
 the FMLA. Under Pratt & Whitney's interpretation, the employer
 would be permitted to fire her even though it could not deny
 the employee leave once she had been employed for twelve
 months. Such a result, in the Secretary's view, would conflict
 with the Act's basic purpose of enhancing job security by
 protecting the right of eligible employees to take leave. 
 Pratt & Whitney's reading would also foster a perverse
 incentive to fire new employees or to refuse to hire
 prospective employees who were seen as posing a risk of
 exercising their rights under the FMLA, such as women of child-
 bearing age, frustrating the Act's basic purpose of
 "minimiz[ing] the potential for employment discrimination on
 the basis of sex by ensuring generally that leave is available
 . . . on a gender-neutral basis." Id. 2601(b)(4). 
 Pratt & Whitney's interpretation would also provide
 less protection for new employees or applicants who notify
 their employers of a need for future leave than those who
 conceal a need for leave, thus frustrating the implementation
 of the Act "in a manner which accommodates the legitimate
 interests of employers." 29 U.S.C. 2601(b)(3). It would
 also conflict with another section of the Act requiring an
 employee to give thirty days' notice for parental leave, if
 practicable. See id. 2612(e). All of these considerations
 reinforce the reasonableness of the Secretary's interpretation.
 In light of Congress' purposes in enacting the FMLA,
 the agency's construction is a permissible one, i.e., one which
 "fills a gap or defines a term in a reasonable way . . . ." 
 Regions Hosp., 118 S. Ct. at 915. Congress enacted the FMLA
 "'to help working men and women balance the conflicting demands
 of work and personal life.'" Hodgens v. General Dynamics
 Corp., No. 97-1704, 1998 WL 248013, at *4 (1st Cir. May 21,
 1998) (quoting Price v. City of Fort Wayne, 117 F.3d 1022, 1024
 (7th Cir. 1997)). The FMLA was Congress' response to what it
 considered significant social problems affecting families,
 including "'inadequate job security for employees who have
 serious health conditions that prevent them from working for
 temporary periods.'" Id. (quoting 29 U.S.C. 2601(a)(4)). 
 The Act does so by establishing a minimum leave standard which
 requires all covered employers to permit eligible employees to
 take up to twelve weeks of unpaid leave for certain family or
 medical purposes. See id. at *5; see also S. Rep. No. 103-3,
 at 4 (1993), reprinted in 1993 U.S.C.C.A.N. 3, 6-7 ("The [Act]
 is based on the same principle as the child labor laws, the
 minimum wage, Social Security, the safety and health laws, the
 pension and welfare benefit laws, and other labor laws that
 establish minimum standards for employment.").
 As both Duckworth and the Secretary of Labor
 persuasively argue, the achievement of these objectives would
 be frustrated by adopting Pratt & Whitney's interpretation. 
 That interpretation would permit an employer to evade the Act
 by blacklisting employees who have used leave in the past or by
 refusing to hire prospective employees if the employer suspects
 they might take advantage of the Act. See Robinson, 117 S. Ct.
 at 848-49 (deferring to EEOC's concern over potential
 retaliation in defining "employee" to include former
 employees); Town & Country, 516 U.S. at 90 (1995) (noting that
 "the Board needs very little legal leeway here to convince us
 of the correctness of its decision" extending the term
 "employee" in the NLRA to include prospective employees who
 were also union organizers).
 Pratt & Whitney's concerns, echoed by amici business
 groups, nonetheless are not without force. They are concerned
 that the FMLA not be interpreted as establishing a special
 protected class of "FMLA leave-takers" in which any adverse
 action is presumed to be the result of ulterior motives. This
 opinion does not lead to that result. Duckworth's complaint
 states that it was his use of FMLA-protected leave which caused
 Pratt & Whitney to reject his application for employment. To
 prevail, Duckworth will have to convince the trier of fact that
 Pratt & Whitney would have hired him if he had not taken FMLA-
 protected leave, i.e., that the reason it refused to hire him
 was because of his use of FMLA-protected leave in the past. 
 The Secretary of Labor's interpretation of the FMLA
 is certainly within the permissible range of policy options
 which Congress delegated to the agency. If the regulations, in
 practice, prove unduly burdensome to employers, employers may
 seek to have the Department of Labor revise the regulations or
 seek relief from Congress, which expressly delegated to the
 agency such policy choices.
 Because Duckworth's complaint states a claim upon
 which relief may be granted, we reverse the district court's
 judgment and remand the case for further proceedings consistent
 with this opinion. Costs are awarded to Duckworth.